### In the matter of Hoag.

Where a party has been found to be incapable of managing his affairs by reason of habitual drunkenness, the court will not discharge his committee and restore the property to him upon mere proof of the fact that he is competent to manage his affairs, without evidence of a permanent reformation. And as a general rule the court requires, as evidence of a permanent reformation, satisfactory proof that the habitual drunkard has voluntarily refrained from the use of intoxicating liquors for at least one year immediately preceding the application for the restoration of his property.

Where vendors of intoxicating liquors continued to furnish the same to an habitual drunkard against the wishes of his committee, the court made an order prohibiting them from doing so upon pain of being held liable for a criminal contempt ; and directed the committee, in case of disobedience of the order, to apply to the court to punish the offenders, or to lay the case before the grand jury that they might be proceeded against by indictment.

The court of chancery is not authorized to order a sale of the estate of a lunatic, or of an habitual drunkard, except where a sale is necessary for the support of himself or of his family, or for the payment of his debts. But if necessary for the reformation of an habitual drunkard, the court will direct him to be confined in a lunatic assylum, and may order his real estate to be sold to pay the expences of his support there.

December 18.    This was an application of Obadiah Hoag who was placed under the care of a committee, in 1821, as an habitual drunkard, to have his property restored to him.   The application was founded upon his own petition stating generally that he had reformed ; and upon the affidavits of four other persons, two of whom lived on the adjoining farm, stating their belief that his reformation had continued, for different periods from six months to two years, so as to render him capable of managing his own affairs.   The petitioner also complained of the mismanagement of his property by the committee, and asked for his removal.   The committee expressed a willingness to relinquish his trust and to have his accounts settled ; although his counsel introduced affidavits denying the allega-

tions as to the mismanagement of the property. And the committee did not admit that he believed the petitioner had reformed. On the part of the family several affidavits were produced showing conclusively that up to some time in September, 1833, and within three months of the time of presenting the petition, the petitioner had been in the habit of getting intoxicated whenever he could obtain inebriating drinks; and that he had been several times intoxicated subsequent to that period, though not as frequently as before. These affidavits also showed that all the children and relatives of the petitioner who resided in the vicinity, so as to be capable of forming an opinion on the subject, were satisfied with the conduct of the committee, and were anxious that he should retain the trust.

*A. Bennet,* for the petitioner.

*H. Denio,* for the committee and the family.

THE CHANCELLOR. It has been found by experience, after an individual has so far given himself up to the indulgence of a depraved appetite as to become incapable of conducting his own affairs by reason of habitual drunkenness, that all indications of a permanent reformation are entirely illusory so long as he permits himself to use any intoxicating drinks whatever; and that the only chance of a permanent reformation for the unfortunate man who is once placed in that situation is to abandon the intoxicating cup entirely, and forever. The court, therefore, acting upon this well established fact in relation to the effects of any intoxicating liquor upon the appetite which has once become thus depraved, will not restore the property of the habitual drunkard to his possession, upon the mere proof of the fact that he is now capable of managing the same, so long as he continues the use of his inebriating drinks. And total abstinence from all alcoholic liquors, or from intoxication which as to him is the same thing, for at least one year is necessary to authorize the court to presume there is a permanent reformation, even under the most favorable circumstances.

It must also be a voluntary abandonment of the use of intoxicating drinks, and not an abandonment which is the result of constraint or of the want of means to procure them.

Here the petitioner does not pretend that he has voluntarily relinquished the use of strong drink for a whole year, or even for a month, when he has had the means of procuring it. And no one of those who have furnished him with affidavits in support of his petition have ventured to say they believed that such was the fact. Indeed if the affidavit of the wife and daughter is true, that as late as September last the petitioner, in one of his drunken frolics, drove his family from the house and made such a noise as to alarm the neighborhood, I do not see how it was possible for two of those neighbors to swear even to their belief of his reformation. And the fact that the petitioner was frequently intoxicated within the last year is corroborated by the testimony of four witnesses who were not members of the family. Here then is the positive testimony of six witnesses, showing conclusively that the petitioner has not reformed, to counterbalance the mere belief of four others that he has. There is no foundation whatever, therefore, for a reference to a master to inquire whether he has so far reformed as to authorize the court to presume he will for the future refrain entirely from the use of intoxicating liquor. And until such a presumption can be raised in his favor his property cannot be restored to him with safety to his family or to himself.

Neither is there any sufficient grounds for removing or changing the committee, or to justify the court in subjecting the estate to the expense of a reference to make further inquiries on that subject, or of a formal reference to take the accounts of the estate in the hands of the committee. The petition must therefore be dismissed ; and the committee must pay the necessary costs and expenses of opposing the same, out of the estate in his hands. The committee must, however, make out and file with the register an account an l inventory of the estate, in the form prescribed by the 154th rule, showing the present situation and value of every part of the real and personal estate committed to his care and

management; and also a statement of the accounts between him and the estate from the time he was left as the sole committee, to be examined by the injunction master in the usual way. And a similar account and inventory must thereafter be filed annually, as directed by the rule.

To save this unfortunate old gentleman, if possible, from his worst enemy, standing as he does upon the brink of the grave, an order must also be entered, as in *Heller's case*, (3 *Paige's Rep.* 202,) prohibiting all persons from selling to or furnishing him with any intoxicating liquor, or with the means of obtaining it, without the express sanction of his committee, upon pain of contempt. The committee must also cause copies of the order to be served upon the vendors of such liquors in the neighborhood. And if any person upon whom such order is served, or who is otherwise informed thereof, shall be guilty of a breach of the order, the committee must either bring the case before this court or lay the same before the grand jury of the county, so that the offender may be punished as for a criminal contempt. (2 *R. S.* 278, § 10, *sub.* 2. *Id.* 692, § 14.) And the necessary expenses of the committee upon any proceedings under the order will be allowed to him out of the estate.

This court has no power to order the petitioner's real estate to be sold unless it is necessary to sell it for the payment of debts, or for the support of himself or of his family. And a sale is not necessary for either purpose in the present case. If it should be found expedient hereafter to place him under the care and protection of the keepers of a lunatic asylum, and to sell the real estate for the purpose of raising funds to support him and his family, in that event the committee must apply for a sale of the real estate, in the form prescribed by the revised statutes, and for such further directions as may be necessary for the security and comfort of the petitioner in such a retreat.