HALLOCK and others *vs.* SMITH and others.

The vendor of real estate has, ordinarily, an equitable lien upon the land sold, for the unpaid and unsecured purchase money.

Taking the note of a third person, as payment for a part of the purchase money, will not discharge the lien of the vendor for the portion of the purchase money still remaining unpaid.

Nor will the taking of security from a third person, for a portion of the purchase money, destroy the vendor's lien for the residue; *it seems.*

Neither will the taking of a note or bond from the vendee, for the purchase money, amount to a waiver of the vendor's lien. But if such note or bond is assigned or transferred to a third person, for his benefit, the security is gone forever.

This rule does not apply, however, where the transfer is only for the purpose of paying the debts of the vendor, so far as it may be available, and is therefore for his benefit. In that case the equity continues.

The lien of the vendor, for the purchase money, exists not only against the original vendee but also against subsequent purchasers and incumbrancers, either when they advance no new consideration, or when they have notice.

IN EQUITY.  The plaintiffs in this suit were sureties for one Jonathan W. Huntting, for the payment of a sealed note dated 13th September, 1834, on which there was due about eight hundred dollars, and part of which they had paid.  The bill was filed to compel the defendant Reuben Smith, jr. the assignee of Huntting, to account for property assigned to him by the latter, on the 11th of April, 1837, to pay the debts of Huntting, including this debt, and particularly to compel the collection of a note for $510,40, given by the defendant Mortimer S. Brown to Huntting on the purchase of certain real estate at Southold, Suffolk county, on the 16th January, 1837, and which note passed into the hands of the assignee with his other assets.  This note it was claimed was given for part of the purchase money; and formed an equitable mortgage.  The defendant Leander Brown was made a party as holding a mortgage on the same premises for one thousand two hundred dollars, executed by Huntting, to him on the 23d of September, 1837; which the plaintiff insisted was fraudulent, and taken

Hallock v. Smith.

with full notice of the claim for the purchase money. It was also alleged that this real estate was subsequently conveyed by Mortimer S. Brown to Reuben Smith, jr. the assignee. The defendants set up, in their answer, the defence that no more than sufficient had been realized from the assets of Huntting to pay the debts first secured, and certain sums admitted in the bill to have been paid on account of the complainant's liability, and that nothing remained undisposed of, or to be collected, except a judgment set forth in the bill, recovered by Huntting upon the note given to him by Brown. They also alleged that $221,46, part of the purchase money of the land at Southold, sold by Huntting to Brown, amounting to $500, was paid by a note given by one Case to Leander Brown, endorsed by the latter to Mortimer S. Brown, and by him to Huntting. This note was for $221,46. That the note of $510,40 was partly for the residue of the purchase money, being $288,94, and partly for hardware obtained by the defendant Mortimer S. Brown from Huntting, and used in finishing a building on the lot at Southold bought by him. The defendant Leander Brown contended that the sum of $1200 mentioned in the mortgage to him, consisted of various sums of cash paid for, and to, the defendant Mortimer S. Brown, of articles sold by him to the latter, and the above note of $221,46; of which sums an account was had between them, and the same was found to amount to upwards of $1200, exclusive of interest. These various items accrued at different times between September, 1832, and September, 1836; the above note being one of the last. The defendants also contended that the lot at Southold was bought by Mortimer S. Brown from Huntting, with a lot of materials for completing the building thereon, for $500, with the understanding that Brown should use up those materials and complete the building; and that on being dissatisfied therewith, Huntting agreed to repay the purchase money and expenses, and take back the property. The defendants also alleged that the moneys expended, with the purchase money, amounted to $1100; that Mortimer S. Brown tendered a conveyance of the premises to Huntting and Reuben Smith, jr. on

receiving the amount of his advances, but they both refused to pay them. The defendant Mortimer S. Brown also contended that he was induced to give the bond and warrant of attorney in the bill mentioned, on the note for $510, by misrepresentation of his liability. The conveyance by Brown to Smith of the premises at Southold was denied. The cause was heard on pleadings and proofs.

*Geo. Miller,* for the plaintiffs. The whole amount of the note from Mortimer S. Brown to Huntting was for the purchase money of the premises conveyed by the former to the latter, and is a lien upon the premises, to be preferred to the mortgage to Leander Brown. (*Garson* v. *Green,* 1 *John. Ch. Rep.* 308. 2 *Mad. Ch. Rep.* 128, 129.) Leander Brown knew of the lien of the note; and his mortgage was taken for an antecedent debt. The defendants set up a false and fraudulent defence in their answer. Their story is not only without proof, but it is shown by their own answers, and the proofs, to be totally false. The mortgage should be postponed to the note, because the note is the prior lien, and because the defendants have not sufficiently established the consideration of the mortgage. If only part of the note shall be held to be a lien preferable to the mortgage, yet the complainants are entitled to full costs, because they have been obliged to contend against a defence evidently false and fraudulent; while they had strong probable ground for believing that the whole note was for purchase money. Reuben Smith, jr. has violated his trust as assignee. He should be decreed to render an account before a referee, with costs.

*J. M. Van Cott,* for the defendants. The defendant, Reuben Smith, jr. has faithfully executed his trust, as the assignee of Jonathan Huntting. The bill should, therefore, be dismissed, as to him, with costs. By receiving the note of Case, endorsed by the defendant Leander Brown, for $221.46, in part payment of the purchase money, the vendor relinquished his equity to a *lien* on the land for the residue. The defendant, Leander Brown, is a *bona fide* mortgagee, without notice, except the spe-

Hallock *v.* Smith.

cial notice disclosed in the answer. Under the circumstances so disclosed, the vendor has no equity against the vendee; and if he had, his equity is inferior to that of the vendee's mortgagee. An equitable lien for the purchase money can be held only by the vendor. It does not pass to the endorsee of a note given for the purchase money, or by a general assignment for the benefit of creditors. If the vendor's equity could pass by assignment, it vested in the defendant, Reuben Smith, jr. by the general assignment for the benefit of creditors, and *can be* enforced only by him. If the equity could be enforced by a creditor, on the default and refusal of the assignee to proceed, the bill does not make a proper case to justify its being filed by the complainants. They should have called on Smith to file the bill, and tendered a sufficient indemnity against costs. The bill is defective in not making Huntting a party; and it should be dismissed, with costs to all the defendants.

STRONG, J. That the vendor of real estate has ordinarily an equitable lien upon the land sold, for the unpaid and unsecured purchase money, is well settled. The principle is founded upon the presumed intention of the parties, although it often happens that they know nothing about the rule, and of course did not contemplate the security at the time of the sale. The general presumption based upon equitable considerations is sufficient to establish the lien, although it hangs by a slender thread which is easily broken. In this case, a note was given by the purchaser some time after the sale, and about the time when the conveyance appears to have been executed, for $510,40, corresponding in amount with the purchase money and the interest upon it, after allowing a credit of six months from the time of the sale, which is customary in that part of the country where the transaction took place. That, if unexplained, would raise an inference that the note was given wholly for such purchase money, and that the lien continued for all the principal and interest due. But it was proved by the vendor, who was introduced as a witness for the complainants, that $221,06 of such purchase money had been previously paid by

a note against a third person. Consequently the lien, if it now exists, can be for only the remaining $288,94, and interest.

The defendants' counsel contended, on the argument, that, inasmuch as Huntting, the vendor, had taken the note of a third person for a part of the purchase money, the lien for the residue was discharged. It does not appear, however, that such note was taken as security. On the contrary, Huntting testifies that it was delivered and received as part payment. If so, that would not discharge the lien for the amount still remaining unpaid. Chancellor Kent, speaking on this subject says, (*4th Com.* 151,) that "the vendee becomes a trustee to the vendor for the purchase money, *or so much as remains unpaid.*" Neither do I conceive that when the vendor takes security from a third person for a part of the purchase money, the lien for the residue is destroyed. That would not be a reasonable rule; nor do I find any case which goes that length. True, if security is expressly taken *on the land sold,* for a part, there is no lien for the residue. The reason is, that the vendor would not have taken such security on the land for a part of the purchase money, if he had intended that the same property should continue bound for the whole. It has been decided that if it can be fairly inferred from the circumstances of the sale, that the vendor did not intend to rely upon the equitable lien which the law would give him, he cannot resort to it. So if he afterwards shows an intention to abandon the security which was originally valid, it is gone, and cannot, under any circumstances, be resumed.

As the note to the vendor was given in part only for the consideration money, and as the residue included in such note could not, under the circumstances, be a lien upon the land, it might be a question whether that does not raise an inference that he intended that both parts should fare alike, and as there was no security for one, then there should be none for the other. But the point was not raised by the counsel for the defendants, and as the giving of the note was not a payment of the amount, and the vendor had the right, after it became due, to fall back upon the original consideration, I think it would be stretching

a presumption too far to suppose that he intended to relinquish his security for the payment of any part of the money.

If the vendor take a note or bond from the vendee for the purchase money, that is no waiver of the lien, for such instruments are only the ordinary evidences of the debt. ( *Winter v. Lord Anson*, 3 *Russ. Rep.* 488. *Lagow v. Badollet*, 1 *Blackf. Ind. Rep.* 416. *Eskridge* v. *McCluse*, 2 *Yerg. Rep.* 84.) But if the note or bond is assigned or transferred to a third person, for his benefit, the security is gone forever. The reason is, that there is no peculiar equity in favor of the third person. But that does not apply where, as in this case, the transfer is only for the purpose of paying the debt of the vendor, so far as it may be available, and is therefore for his benefit. There the equity continues.

The defendants' counsel insisted that Huntting, being interested, should have been made a party. That is not necessary; as the defendant Smith, by the very nature of the trust, represents his interest, and is clothed with his original powers. It was also contended that Huntting was interested, and that therefore his testimony should be suppressed. Undoubtedly he has an interest that the lien should be enforced and the money applied in payment of his debt; and if the objection had been raised in season, it would have prevailed. But it was competent for the defendants to waive it, and as the facts upon which it is founded must have been known to them at the commencement of the examination, and they then permitted him to be sworn in chief, and without raising the point, it is too late for them to insist upon it now.

The lien exists not only against the original vendee, but also against subsequent purchasers and incumbrancers, either when they advance no new consideration, or have notice. In this case it is clear that the mortgage from Mortimer S. Brown to Leander Brown, if given for any valid consideration at all, was for moneys previously advanced, or for former liabilities. It is admitted by Leander Brown, in his answer, that he knew that the purchase money remained unpaid when his mortgage was executed; but he attempts to qualify his admission by saying

that he knew at the same time that the vendor had agreed that upon certain contingencies he would take back the bond and refund the money; that such contingencies had occurred, and the vendee had offered to restore the premises, but that the vendor was not in a situation to refund the money, and consequently the land was not reconveyed. If the agreement had been valid, it is difficult to see how that fact could have affected the notice. If the defendant Mortimer S. Brown had a title to the land, then his mortgage to Leander Brown may have been valid, and the question of notice might have been material. But if the conveyance had been conditional, and the title was still in Huntting, then the mortgage was of no validity, and Leander Brown would have no right to raise any question as to the lien of any one. If the mortgage was valid, Leander Brown had notice. If it was invalid, no notice was necessary. The complainants were not bound to fight against a shadow. It does not appear whether the alleged agreement, if it ever existed at all, was in writing or not; but as it is not averred in the answer that it was in writing, and no written document was produced in evidence, it is fair to presume that it was by parol only. In that case it could not have qualified the title at all. It was not competent to prove it in a court of law, nor, as I conceive, in a court of equity. ( *Webb* v. *Rice*, 6 *Hill's Rep.* 219.) Parol evidence is inadmissible to vary the terms of a deed, or to qualify the title which it purports to convey, except on a bill between the parties, or their privies, to correct it.

As Huntting had assigned the equitable lien in question to the defendant Smith, for the payment of his debts, it was the duty of Smith to enforce it. There is no pretence that he was ignorant of the facts. If he was ignorant of the law, that did not excuse him. Such is the rule, and although non-professional men are generally better acquainted with the facts than with the law, still the principle is sound, and calculated to promote the general good, and should be enforced. Yet he has not only refused to proceed in a case where the value of the subject matter would have fully indemnified him against any personal loss, but he has joined with the other defendants (one

---

Hallock *v.* Smith.

---

of whom was his clerk or employee) in resisting the claim, and insists in his answer that an attempt to enforce payment might be successfully resisted. The bill in this case was properly filed against the three defendants.

The plaintiffs, being security for the payment of a debt from Huntting (who is insolvent) to Mrs. Wiggins, which is entitled under the assignment to a priority over all those now remaining unpaid, and of sufficient amount to absorb the whole fund in question, and the assignee being disinclined to proceed, there can be no doubt of the right of the plaintiffs to file their bill for the purpose of having the validity of the lien judicially declared, and such lien eventually enforced. The bill is not framed in a manner, nor are there all the requisite parties, to justify a decree for a sale of the land.

A decree must be entered, declaring that the defendant Smith holds, under the assignment from Huntting to him, an equitable lien, which the plaintiffs have a right to have enforced, on the land sold and conveyed by the assignor to Mortimer S. Brown for the unpaid portion of the purchase money, amounting to $228,94, with interest to be calculated six months from the day of sale, and extending such lien in behalf of the plaintiffs to the amount of their costs, and declaring and directing that the whole shall be entitled to a priority over the mortgage given by Mortimer S. Brown to Leander Brown, and that a supplemental or other bill may be filed by the plaintiffs, either alone or in connection with one or more other plaintiffs, as they may be advised, against all the necessary defendants, to enforce such lien by a sale of the land. There does not seem to be any good reason for requiring Smith to account, at present. Liberty must be reserved to the plaintiffs to call on him hereafter for that purpose, both in reference to the past and the future.

I shall give no costs against the defendants personally, nor allow them any.