WALTER WALRATH and Others, Appellants, *v.* WILLIAM H. ABBOTT, Respondent.

*Lunatic's land — the terms of sale of must be obeyed by the purchaser — purchase price remains realty — heirs of the lunatic can charge the purchase price on the land.*

Real property of a lunatic was sold under proceedings taken for that purpose, the order in which directed that a part of the purchase price should be secured by a bond and mortgage on the property sold. This mortgage was not, in fact, given, but the committee of the lunatic accepted a part of the amount to be secured by the mortgage in cash, and took a third mortgage on other property to secure the balance, the purchaser stating at the time that there were two other mortgages on the property, but that he considered the one taken by the committee to be good. Subsequently, one of the prior mortgages on this property was foreclosed, and the lien of the mortgage assigned to the committee was cut off, and the mortgagor in this mortgage given to the committee proving to be insolvent, the security became worthless.

The lunatic having died intestate, an action was brought by her only heirs at law to have the amount of the original sale, represented by the worthless mortgage, declared unpaid, to be a lien on the land sold, and to foreclose that lien. The plaintiffs tendered to the defendant, the purchaser of the lunatic's land, the mortgage taken in part payment of the purchase money, and an assignment of it. This the defendant refused to accept; he also refused to pay the balance of the purchase price represented by this mortgage.

On the trial the referee found that the representations of the defendant were not made with the intent of defrauding the committee; that the mortgage was not known by the defendant to be worthless, and that it was accepted by the committee in payment of the balance then due of the purchase price of the lunatic's real estate.

The referee also found that the purchase price was to be considered as real estate, but refused to find that the assignment of the mortgage by the defendant to the committee was not payment of such purchase price, and that the balance thereof due and represented by the mortgage was real estate, and as such passed to the heirs at law of the lunatic.

It was contended that under section 2339 of the Code of Civil Procedure only the committee could maintain this action, and the referee found that the plaintiffs could not maintain it.

*Held,* that under section 2359 of the Code of Civil Procedure, the proceeds of the sale of real estate of an insane person remain property of the same nature as the estate or interest sold until the insanity is removed, and consequently pass to the heirs at law of the deceased lunatic, who could maintain this action;

That there was no power in the defendant or the committee to change the manner of the payment of the purchase price of the real estate sold, except through an order of the court;

That the defendant had knowledge of the terms of sale as directed by the court and could only discharge his liability to pay the purchase price by complying therewith, and that the committee of the lunatic could not authorize a different method of settlement;

That the assignment of the third mortgage by the defendant to the committee of the deceased lunatic was not a payment of the defendant's existing debt for the balance of the purchase price of the real estate;

That as both parties to that transaction were ignorant of the insolvency of the mortgagor and the worthlessness of the mortgage, the transfer was made under a mutual mistake of fact;

That the plaintiffs had in equity a lien upon the land sold, to the extent of the unpaid purchase price, which they could enforce by foreclosure and a sale of the property to satisfy it.

APPEAL by the plaintiffs, Walter Walrath and others, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Herkimer on the 13th day of August, 1893, dismissing the plaintiffs' complaint upon the merits and for costs.

*A. H. Bellinger* and *C. J. Palmer*, for the appellants.

*H. Clay Hall* and *George W. Smith*, for the respondent.

MARTIN, J.:

The purpose of this action was to establish and foreclose a vendor's lien upon certain real estate for a portion of the purchase price.

The questions which are sought to be reviewed upon this appeal arise upon the judgment roll, which includes the summons, pleadings, the plaintiffs' requests to find, findings of the referee and judgment. Thus, the question to be determined is whether the referee's conclusions of law are sustained by the facts found by him.

A brief statement of the facts seems necessary to a clear understanding of the questions involved. On May 3, 1888, Elizabeth R. Walrath, a resident of Herkimer county, was adjudged a lunatic, and Walter Walrath was duly appointed as committee of her person and property by an order of the Herkimer County Court, dated on that day. He qualified as such committee and entered upon the discharge of his duties. On the twenty-fifth day of the same month he, as such committee, instituted proceedings in the Herkimer County Court for the sale of certain real estate which belonged to the lunatic. Such proceedings were had therein that on the 1st day of August, 1888, Charles E. Teall was appointed special guardian of such lunatic, and S. W. Petrie, Esq., was appointed a referee to inquire into the merits of the application, and to report the testimony, with his opinion thereon. Teall consented to act as such guardian, and duly qualified. Petrie qualified as referee, and took proof of the facts and reported the same to the court with his opinion thereon. The value of the real estate was reported to be the sum of $2,100. Upon filing such report, the court made an order confirming the same, and directing Teall, as special guardian, to make a contract for the sale and conveyance of the real estate, subject to the approval of the court, for a sum not less than $2,100, and also directing the guardian to report the terms and conditions of the agreement to the court before making a conveyance.

Thereupon, and after the entry of the order, Teall, as special guardian, entered into an agreement with the defendant to sell him the premises in question for $2,100, $600 to be paid in cash upon the execution of a deed, and the remainder to be secured by a bond

and mortgage payable $500 yearly with interest, with an option to the defendant to pay more. Afterwards, and on the 23d day of November, 1888, the special guardian reported to the court the agreement made with the defendant and the terms thereof. This report was signed and acknowledged by the special guardian, and the contract made with the defendant attached thereto. The report was ratified and confirmed by the court, and the special guardian directed in the name of and for the lunatic to execute, acknowledge and deliver a deed of said real estate to the defendant upon his complying with the terms and conditions of the agreement. On the same day the guardian executed, acknowledged and delivered to the defendant a deed of the real estate, which was recorded in Herkimer county November 26, 1888. But the defendant gave no mortgage upon such real estate to secure any part of the purchase price thereof, as by such order and agreement he was required and had agreed to do.

Prior to the 21st day of November, 1889, the defendant paid all the purchase money excepting the sum of $950. On that day it was agreed between the defendant and Walter Walrath, who was still the committee, that the portion of the purchase price then remaining unpaid might be paid by an assignment of a mortgage held by the defendant against one Nelson, and the remainder in cash. The defendant stated that he considered the mortgage good, and Walrath was satisfied to accept it for its face value, with accrued interest, which was twenty-three dollars and seventy-five cents. The mortgage was assigned to Walrath by the defendant, and the residue of such purchase price was paid in cash. At the time of the assignment Walrath was informed by Nelson that there were two prior mortgages which were a lien on the mortgaged premises, one for $1,000 and one for $3,500, with some interest upon each.

The assignment of this mortgage is the only way in which it is claimed or pretended that the sum of $523.75 of the purchase money was ever paid. One of the prior mortgages was subsequently foreclosed and the property was sold, but it did not bring a sufficient sum to pay the two prior mortgages, and, hence, there was nothing to apply on the $500 mortgage thus assigned. The mortgage assigned contained a covenant by the mortgagor to pay the mortgage debt, but he was insolvent both at the time of the foreclosure and

when the mortgage was assigned, so that nothing whatever could be realized either upon the mortgage or the covenant.

On the 23d day of March, 1890, Elizabeth R. Walrath, while still a lunatic, died intestate leaving no husband her surviving, but left surviving her the plaintiffs who were her only heirs at law and next of kin. Between April 18, 1890, and July 1, 1890, Abram H. Bellinger, at the request of Walter Walrath, who was the committee, tendered to the defendant the Nelson mortgage, and offered to surrender the same and cancel the assignment thereof, but the defendant refused to accept the mortgage or receive the cancellation of the assignment.

About August 14, 1891, Bellinger, acting for the plaintiffs, tendered to the defendant a paper, under seal, executed by all the plaintiffs, which was in effect a reassignment of the mortgage to the defendant, and also tendered him the mortgage and demanded payment of the $500, with interest from November 21, 1889. The defendant refused to accept the paper or to pay the money demanded.

The referee found that the representations alleged in the complaint were not made by the defendant with an intent to cheat and defraud Walter Walrath, or any of the plaintiffs, and that the fraud and deceit alleged therein were not practiced by the defendant; that he did not know of or understand that the mortgage assigned was not of the value of $523.75; that the assignment of such mortgage was accepted by Walter Walrath as a payment of $523.75 upon the purchase price of said real estate; that the balance of such purchase price was paid in cash by the defendant, and that at the time of the commencement of this action, no part of the purchase price remained unpaid. As a conclusion of law he held that the plaintiffs' complaint should be dismissed upon the merits, with costs, and ordered judgment accordingly.

The plaintiffs requested the referee to hold that the purchase price of the premises sold to the defendant was real estate. This he held. They also requested him to hold that the balance of the purchase price, $523.75, was real estate at all times subsequent to the deed to the defendant up to the time of the death of Elizabeth R. Walrath, and that upon her death it passed as real estate to the

plaintiffs as her heirs and next of kin; that the assignment of the mortgage by the defendant to Walter Walrath as committee was not a payment of the balance of the purchase price of the premises; that Walter Walrath as committee had no authority to release the defendant from his liability to pay the balance of the purchase price upon receiving the assignment of such mortgage; and that upon the death of Elizabeth R. Walrath the right to receive the balance of the purchase price of the defendant passed to the plaintiffs. The referee refused to find or hold any of these propositions, to which refusal the plaintiffs duly excepted.

The respondent contends that "the committee was the only person who had a right to commence this action. The lunatic being dead, the trustee took all the funds arising from the sale of the real estate, subject only to distribution, and he was the owner of the mortgage upon which the charge of fraud was made." He cites section 2339 of the Code of Civil Procedure as sustaining this proposition. We find nothing in that section which would seem to uphold the proposition. Indeed, it is not quite clear as to what claim is intended to be made by the respondent. Assuming, however, that it was intended to challenge the right of the plaintiffs to maintain this action, the question of such right will be examined.

Independent of statute, courts have no authority to sell the real estate of a lunatic, even for the payment of his debts, although the heirs at law and next of kin consent to such sale. (*Matter of Pettit*, 2 Paige, 596; *Matter of Hoag*, 7 id. 312.) Thus, the authority to sell such real estate must be found in the statute. The statute which authorizes such a sale provides the procedure to be adopted, and to some extent declares the rights of the parties, is now contained in title 7 of chapter 17 of the Code of Civil Procedure. An examination of that title discloses that by the provisions of section 2359 the proceeds of the sale of the real estate of an incompetent person are to be deemed property of the same nature as the estate or interest sold until the incompetency is removed. This provision is not new. It was intended as a re-enactment of the provisions of section 10 of chapter 417 of the Laws of 1864. The evident purpose of this statute, like the statutes relating to the sale of infants' real estate, was to preserve the character of the property in reference to the statutes regulating descents and distributions.

(*Forman* v. *Marsh*, 11 N. Y. 544; *Matter of Price*, 67 id. 234; *Sweezy* v. *Thayer*, 1 Duer, 286.)

The statute which permits the land of a lunatic to be sold and turned into money, under the order of court, is careful to provide that its character shall remain unchanged for the benefit of all interested therein, and is indeed but a repetition of the existing rule of equity. Hence, the sale of a lunatic's real estate, even in partition, does not convert it into personalty, nor does taking it by condemnation proceedings. (*Ford* v. *Livingston*, 140 N. Y. 162; *Cutting* v. *Lincoln*, 9 Abb. Pr. [N. S.] 438; *In re Barker's Case*, L. R. [17 Ch. Div.] 241; *In re Wharton*, 5 De G., M. & G. 33; *Awdley* v. *Awdley*, 2 Vern. 192.)

It follows, we think, that if any of the proceeds of the sale of the lunatic's real property remained at the time of her death, she having then been a lunatic, its character as realty continued, and upon her death it descended to her heirs at law. If correct in this conclusion, we can see no sufficient reason why the plaintiffs, who were her heirs at law, were not the proper parties to bring this action.

Another question which arises upon this appeal is whether the plaintiffs were, upon the facts found, entitled to the relief sought. There can be no doubt that the real estate of the lunatic was transferred to the defendant, and that he agreed with the special guardian to pay him therefor the sum of $2,100. It is equally plain that he has not paid him $523.75 of that amount. How much of the purchase price was paid by the defendant to the special guardian does not appear in the findings of the referee. It does, however, appear that a portion of the purchase price was paid to Walter Walrath, but by what authority, or that there was any direction of the court to pay him that sum does not appear. Nor does it appear that Walter Walrath had any authority to receive the assignment of the Nelson mortgage in payment of the defendant's debt. The order of the court was that $600 of the purchase price should be paid to the special guardian in cash and the balance secured by a mortgage payable $500 a year, with interest, and at the option of the defendant a greater sum might be paid. From the facts as found by the referee, we have sought in vain to discover that the defendant had any power or authority to pay any portion of the purchase price by transferring the mortgage in question to Walrath. Walrath had no power to

collect the purchase price of the real estate sold unless the court, by some order authorized him to do so, or in some way placed the debt in his hands. The court, by its order, directed the manner in which the purchase price should be paid and secured. A fair construction of that order renders it manifest that the court intended to require that the portion of the purchase price, which was not paid to the special guardian in cash when the deed was given, should be secured by the defendant's bond and a mortgage upon the premises sold. With the provision directing that such security should be given the defendant did not comply. This provision must have been known to him, for it was a part of his agreement, and without the order containing it, the person who transferred the real estate to him would have had no power or authority to make such transfer. With this knowledge and with an utter disregard of the order requiring him to give his bond and a mortgage on the real estate purchased, he took the deed, and afterwards sought to pay a portion of his then existing debt by the assignment of a mortgage which was worthless.

Thus, we are called upon to determine whether, under these circumstances, the delivery and assignment of the Nelson mortgage can be regarded as a payment and consequent discharge of the defendant's debt for that portion of the purchase price, although Walrath assumed to accept it as payment. Neither at common law nor by statute has a committee of a lunatic power to dispose of his estate without an order of the court. He has no title to nor interest in the real estate, but is simply an agent, officer or representative of the court, and has no independent power to dispose of it in any manner whatever. (*Matter of Application of Otis*, 101 N. Y. 581; *Pharis* v. *Geer*, 110 id. 336.) Walrath, being at most a mere agent of the court, had no power to discharge the defendant's indebtedness without an actual payment. An agent has no power to discharge an indebtedness, even upon actual payment to him, unless he was authorized by his principal to receive it. (*Smith* v. *Kidd*, 68 N. Y. 130; *Ritch* v. *Smith*, 82 id. 627; *Brewster* v. *Carnes*, 103 id. 556, 564; *Seymour* v. *Smith*, 114 id. 481; *Crane* v. *Gruenewald*, 120 id. 274; *Schermerhorn* v. *Farley*, 58 Hun, 66.)

We do not perceive how the defendant could discharge his liability to pay the purchase price by an assignment of a mortgage to Walrath, who was not authorized by the court to receive it. The Code

(§ 2361) provides that the court must, by order, direct the disposition of the proceeds of such a sale, and also direct the investment of any portion which is not needed for the safe-keeping or immediate maintenance of the lunatic or his family, and must require a report of the disposition and investment thereof to be made as soon as practicable. In this case there was an order directing the manner in which the remainder of the purchase price not paid to the special guardian in cash should be invested or secured. This direction was wholly disregarded by the defendant, to whom it must have been known. Under these circumstances we think the defendant had no right to pay or secure the purchase money in any other manner than that provided by the order of the court, and that when he disregarded that order and attempted to pay it in another and different way, he did so at his peril.

The pretended payment was made by the assignment of a mortgage upon property on which there were two prior mortgages given to secure amounts greatly exceeding the value of the land, and the mortgagor and only person liable to pay the mortgage debt was hopelessly insolvent, so that the security given for this portion of the purchase price of the premises, or assigned in payment thereof, was valueless. It may be that the defendant was unaware of the fact that the mortgage assigned was worthless, and in the absence of any finding to the contrary, it must be so held. If it be assumed that the defendant had no knowledge of that fact, it is quite obvious that Walrath was equally ignorant. Hence, it must be determined whether, since both of the parties were ignorant of the worthlessness of the mortgage, a transfer of it to Walrath operated as a payment of the defendant's precedent debt. In *Roberts* v. *Fisher* (43 N. Y. 159), where the defendants, being indebted to the plaintiff for goods sold, gave him a promissory note of a third person, which was received by him in full payment and discharge of the debt, and the maker of the note was insolvent at the time of the transfer, though the fact was unknown to the parties, it was held that the case was one of mutual mistake of fact, and that the plaintiff was entitled to recover of the defendants his original debt. The same principle was held in the cases of *Thomas* v. *Supervisors of Westchester County* (115 N. Y. 47) and *Duden* v. *Waitzfelder* (16 Hun, 337). The doctrine of these cases, as well as every principle of right and

natural justice, require us to hold that the transfer of the Nelson mortgage to the committee did not operate as a payment of the defendant's existing debt for the purchase price of the real estate in question, and that as both parties were ignorant of the insolvency of the mortgagor and the worthlessness of the mortgage, the transfer was made under a mutual mistake of fact and did not constitute a payment of any part of the purchase price.

Having thus reached the conclusion that the portion of the purchase price of the premises which was attempted to be paid by the assignment of the Nelson mortgage still remains unpaid, the only remaining question which we need consider is, whether the plaintiffs were entitled to a judgment declaring such unpaid purchase money a lien upon the premises sold, and directing a foreclosure thereof by a sale of the property to pay and satisfy it. It seems to be well settled that where a vendor delivers possession of an estate to a purchaser, without receiving the purchase money, equity gives the vendor a lien upon the land for the unpaid purchase price. This is especially so where, as in this case, there was an agreement for a mortgage. (1 Beach on Mod. Eq. Jur. § 295 ; *Chase* v. *Peck*, 21 N. Y. 581, 584 ; *Garson* v. *Green*, 1 Johns. Ch. 308 ; *Warner* v. *Van Alstyne*, 3 Paige, 513 ; *Arnold* v. *Patrick*, 6 id. 310 ; *Hallock* v. *Smith*, 3 Barb. 267 ; *Hare* v. *Van Deusen*, 32 id. 92 ; *Dubois* v. *Hull*, 43 id. 26 ; *Benedict* v. *Benedict*, 85 N. Y. 625, 626 ; *Payne* v. *Wilson*, 74 id. 348, 351 ; *Stafford* v. *Van Rensselaer*, 9 Cow. 315 ; *Seymour* v. *McKinstry*, 106 N. Y. 230.) We think the plaintiffs were entitled to the relief sought.

These considerations lead to the conclusion that the learned referee erred in holding that no part of the purchase price remained unpaid and in dismissing the plaintiff's complaint, and hence that the judgment should be reversed.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment reversed and a new trial ordered, with costs to abide the event.