SELDEN D. SNEDEKER, Plaintiff, *v.* MARY A. ELLIS, Individually, etc., and Others, Defendants.

Supreme Court, Niagara County, April 20, 1930.

*George D. Judson*, for the plaintiff.

*Storrs & Storrs*, for the defendants.

*George W. Riley*, guardian *ad litem*, for infant defendant.

WHEELER, Official Referee. Selden D. Redman was in his lifetime a resident of the city of Lockport. He was the owner of certain parcels of real property in that city of the value of about $29,000. He also owned personal property of the value of about $18,590.56.

On the 30th day of December, 1924, he made and executed a last will and testament, in and by which he gave and devised to the plaintiff a certain piece or parcel of land more particularly described in the complaint in this action. The testator subsequently executed a codicil to his will, which, however, in no way changed the devise to the plaintiff. The will and codicil have been duly admitted to probate. After the making of the will and codicil the testator Redman was judicially declared incompetent and the defendant Mary A. Ellis was duly appointed committee of the person and property of Mr. Redman.

After such appointment the committee received an offer to buy the specific piece of real property in and by the will devised to the plaintiff, and thought such a sale would be for the advantage of the incompetent's estate. A petition was presented to the County Court of Niagara county asking for authority to sell, and such proceedings were thereafter had that the committee was given permission to sell and convey. A conveyance was made, and the committee received in cash $2,000 as the purchase price of said property.

The application to the court to sell was based on the allegation that the sale would be for the advantage of the estate, and not that the money to be realized from the sale was necessary for the care and maintenance of the incompetent. It was not as matter of fact needed for that purpose as there was ample personal property to meet all such demands.

The incompetent died on the 8th day of February, 1926, and his

will and codicil were duly admitted to probate, and letters testamentary issued to the defendant Mary A. Ellis.

The plaintiff brings this action alleging that under the provisions of Mr. Redman's will and the circumstances stated he is entitled to be paid the $2,000 received as the purchase price of the real property devised to him and so sold. The sole question for the determination of the referee is whether the plaintiff is entitled to relief asked.

The referee is of the opinion that the plaintiff is entitled to recover, and believes that section 1402 of the Civil Practice Act is conclusive on that question. It reads: " Proceeds of sale deemed real property. A sale of real property, or of an interest in real property other than a possibility of reverter, of an infant or incompetent person, made as prescribed in this article, does not give to the infant or incompetent person any other or greater interest in the proceeds of the sale than he or she had in the property or interest sold. Those proceeds are deemed property of the same nature as the estate or interest sold until the infant arrives at full age or the incompetency is removed. The proceeds of the release of a possibility of reverter shall be deemed and treated as if they were proceeds of real property of which the infant was seized and possessed."

In other words, by the express provisions of the statute the proceeds of the sale still retain the character of real estate, " of the same nature as the estate or interest sold," and as such, although converted into money, still remain real estate as though no sale had been made.

There is simply the substitution of money for realty. It has been accordingly held that such equitable conversion continues during the entire lifetime of a person incurably incompetent, and that dying intestate the proceeds of the sale of lands go to his heirs at law, and not to his next of kin. (*Matter of McMillan,* 126 App. Div. 155.)

Where, therefore, the incompetent has made a valid will disposing of his realty before becoming incompetent, the will obtains as to the proceeds of sale the same as though no sale had been made.

As was said in the *McMillan* case: " The philosophy of the rule adverted to is that the land of the infant or incompetent has been sold without his volition or intelligent assent, and the character of his property must remain unchanged until the disability has been removed. * * * The rule is primarily for the benefit of the incompetent or infant, * * * it is founded to some extent upon the propriety of keeping unchanged the right of succession to the property in the event of the death of the infant or incompetent " (p. 158).

The case of *Brandreth* v. *Brandreth* (54 Misc. 158) is precisely in point.

There subsequently to the making of his will the testator was declared incompetent and his wife as his committee sold certain real estate for the payment of debts at a time when the personalty was sufficient therefor and in ignorance of the fact that the real estate sold had been devised to her by said will. It was held that the wife was entitled to a decree that she be paid out of the personal estate of the deceased incompetent the amount received from the sale of the real estate devised to her.

To the same general effect is the case of *Ford* v. *Livingston* (140 N. Y. 162). (See, also, *Walrath* v. *Abbott*, 75 Hun, 445, and *Matter of Board of Street Opening & Improvements*, 89 id. 525.)

Independent of the statute the same general rule seems to have prevailed in equity, and the provisions of the Civil Practice Act appear to have incorporated such general rule into statutory form.

In a note to Pomeroy's Equity Jurisprudence (Vol. 3, § 1167), cited in *Matter of Department of Public Parks* (89 Hun, 529, 530), the principle is set forth in this way: "'Where land has been taken not by voluntary negotiation, but by compulsory proceedings authorized by statute, and the money is paid into Court, it continues to be real estate until it is taken out by some person having the right to elect to treat it as money, that is, by some person *sui juris* who is an unfettered owner. If the owner is an infant or a lunatic, or if the land is subject to a settlement, the money necessarily retains its character as real estate.'"

As was said in *Matter of McMillan* (126 App. Div. 155, 158): "The rule is primarily for the benefit of the incompetent or infant * * * and is founded to some extent upon the propriety of keeping unchanged the right of succession to the property in the event of the death of the infant or incompetent." (Citing certain cases.)

Redman, the testator, never revoked the provision in his will by which he devised the real property sold by his committee.

To deprive the plaintiff in this action of the benefit of that devise would be most inequitable, and defeat the solemn intention of the testator expressed in his will. Neither the committee of his estate nor the court has the power or the right to defeat the express provisions of the will by proceedings converting realty into personalty.

The referee can reach no other conclusion than that the plaintiff is entitled to the relief asked, and to a judgment or decree directing the executrix of the will of the testator to pay from the estate the $2,000 received as proceeds of the sale of said property less the

expenses of such sale. For an able opinion in conformity to above views see *Matter of Charbonneau* (129 Misc. 356).

It remains for the referee to briefly refer to certain contentions made by the defendants touching the plaintiff's right to recover in this action. Among other things, it is contended that the proceedings to sell were justified due to the fact that the incompetent was contingently liable as an indorser on certain notes, which he might be called on to pay. On the trial of this action before the referee no mention was made of this liability and no evidence offered.

In any event, the incompetent's estate never in fact paid any such liability or notes, and it is conceded by counsel that the committee never in fact paid any such contingent liability, and never had to resort to the incompetent's estate to meet any claims by reason of such liability. So it was unnecessary to resort to any real estate to meet such claims.

Consequently the referee is of the opinion that the character of the fund realized from the sale of the particular parcel in question remained, and must be treated as real estate under the provisions of section 1402 of the Civil Practice Act.

The defendant further contends that this court has no jurisdiction to pass on or determine the issues in question, but that the Surrogate's Court has sole power and authority to dispose of the questions now before this referee.

It is undoubtedly true that section 40 of the Surrogate's Court Act does give the Surrogate's Court full power to hear and determine the claim of the plaintiff made in this action, when properly presented to such court, and that the Supreme Court has power to stay an action of this character, and send the parties to the Surrogate's Court to litigate the questions presented. (*Schley* v. *Donlin,* 131 Misc. 208; *McCormack* v. *Halstead,* 132 id. 916; *Matter of McGrath,* 133 id. 30.)

Nevertheless the fact that the Surrogate's Court has been given jurisdiction over such matters does not operate to oust the Supreme Court of its jurisdiction. The Supreme Court still has the power and jurisdiction to hear and determine the rights of the parties the same as it had prior to the amendment of section 40. In other words, the two courts have concurrent jurisdiction. Section 40 does not undertake to deprive the Supreme Court of jurisdiction, but simply confers on the surrogate added equitable powers in proper cases.

A study of the cases above cited shows that such is the view the Supreme Court entertains.

The cases simply hold that where the question is once before the Surrogate's Court, the Supreme Court may, in its discretion, stay an

action in the Supreme Court and remit the parties to the Surrogate's Court.

But that the Supreme Court has the power to hear and determine issues of the character here presented is fully established in the case of *Ford* v. *Livingston* (140 N. Y. 162).

Had the defendants here moved the court to stay this action it is quite possible an order to that effect may have been made, but no such motion or request was made, and this action proceeded to a trial of the issues on the merits. We, therefore, are of the opinion that the case should be disposed of on the merits, and that the plea of want of jurisdiction is not well taken.

The plaintiff cites the case of *Ametrano* v. *Downs* (170 N. Y. 388) as decisive of this case. In that case condemnation proceedings were had and the award was paid and deposited to the credit of the owner who drew the interest thereon and a portion of the principal and then died. It was contended that the award remained real property, and that under the provision of the will of the owner the fund passed to the devisee named in the will.

However, the Court of Appeals held that by the voluntary acceptance of the award the owner estopped herself from claiming the property and such acceptance was tantamount to a voluntary conveyance, and, therefore, the devisee in the will did not take.

It is quite unnecessary to state that the *Ametrono* case is quite different from that in hand where there was no voluntary conveyance of the property devised or any equivalent act on the part of the incompetent.

The plaintiff in this action seeks to recover the full consideration price of $2,000 paid for the parcel of land sold, with interest from the death of the testator. It appears, however, that the sum of $127.50 was allowed as the costs of the proceeding to sell and the net proceeds of the sale were only the sum of $1,872.50.

The referee directs the payment by said executor to the plaintiff of said sum, with interest, with costs of this action.