[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 546 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 547 
The question is presented, whether, at the time of the death of Charles W. Forman, the bond and mortgage in controversy were real estate descendible to his heirs, or personal estate distributable amongst his next of kin.
The right of the guardian to change the nature of the estate of his ward was acknowledged by the court of chancery at an early period, but it was restricted by two qualifications: First, that the change should be for the manifest advantage of the infant; and, second, that the right of succession to the property, in case of the death of the infant, should not be changed. (Earl ofWinchelsea v. Norcliffe, 1 Vern. 435, and note 3; Witter
v. Witter, 3 P. Wms. 101, and note 1; Peirson v. Shore,
1 Atk. 480; Oxenden v. Lord Compton, 2 Ves. jr. 69;S.C., Bro. Ch. C. 231; Ashburton v. Ashburton, 6 Ves. 6;Ware v. Polhill, 11 id. 257, 278; Ex parte Philips, 19id. 122, 123.) In carrying out this principle it has been the practice of the court, in making orders for the sale of infants' estates, to insert a provision declaring that their quality shall be preserved. This has been done not upon the ground that presumptive heirs or distributees have any right to, or interest in the estate, but because, courts of equity have thought that justice required that even their mere possibilities should be protected. (2 Story's Eq. Jur. § 1357.) There is also another reason founded upon the common law right of an infant to dispose of his personal estate, by will, at an earlier age than twenty-one years. (1 Vern. 435.)
In the year 1815, the legislature of this state passed an act providing, that in case of a sale by a guardian of the real estate of an infant, the proceeds of such real estate should be considered *Page 548 
relative to the statute of descents and distributions, and for every other purpose, as if the real estate had not been sold. (Laws 1815, ch. 106, § 5, p. 104.) And the revised statutes declare that no sale of the real estate of an infant, made as therein provided, shall give to such infant any other or greater estate in the proceeds of such sale, than he had in the estate so sold, but the said proceeds shall be deemed real estate of the same nature as the property sold. (2 R.S. 195, § 180.) These statutes are merely enactments of the chancery rule as applicable to sales of the real estate of infants; and the impress of realty, which was formerly given by the court of chancery, is now given by the statute. The object of the statute undoubtedly is, as it was of the chancery rule, to deprive the guardian of the power to do an act which would affect the rights of the representatives of the infant, or which would give to the infant a power of testamentary disposition which he did not before possess. These are the only reasons for the rule which have ever been, or which can now be suggested. But it was never supposed, under the old chancery rule, that the real estate of an infant when converted into personal, or the personal estate when converted into real, retained its fictitious impression after the infant had attained the age of twenty-one years, and after the estate had come into his possession and under his control. Neither, in my judgment, should such an effect be given to the sale of an infant's estate when made under the statute.
The principle contended for by the counsel for the plaintiffs is, that by the operation of the statute the bond and mortgage, although in fact personal estate, had become real, and that the quality which has thus been given to them cannot be changed, except by an actual conversion into personal estate, or by an act which, in equity, is considered equivalent to a conversion. The necessary effect of such a construction of the statute would be to introduce an anomalous estate into the law, and, as I think, it ought not to be adopted without good reason. It will be remembered that in this case the infant, after he arrived at the age of twenty-one years, came into the possession of the *Page 549 
bond and mortgage, executed an instrument in which he acknowledged the receipt of them, and discharged his guardian from all claims against him in that capacity. The relation of guardian and ward had thus become terminated. All the ends contemplated by the statute had been accomplished. The course of descent had not been changed by any act of the guardian; and the infant had arrived at that age when the law regards him as competent to assume the entire control of his property. At this time the bond and mortgage were personal property in fact, and I think that they should be so regarded in law.
I agree with the counsel for the plaintiff, that this case is not to be governed by the rules applicable to equitable conversion. The bond and mortgage became impressed with the quality of real estate by the operation of the statute, and not upon any principle of equity. But the principles of equitable conversion may be referred to with great advantage by way of analogy and illustration. It is a general rule that where equity impresses a different quality upon property from that which it has in fact, such impression ceases whenever the possession of the estate, and the right to it, in each quality, meet in the same person; that is, when there is no other person than the one who has the actual possession, who has an equitable interest in retaining the fictitious character of the estate. Thus when real uses have been impressed upon personal property, and the personal fund and the uses come together in the same person, the uses are considered as discharged and merged; for there is no person to call for their application. (Pultney v. Darlington, 1 Bro.C.C. 223; Wheldale v. Patridge, 8 Ves. 228; Rashleigh v.Master, 1 Ves. jun. 201; Leigh Dalzell on Eq. Cas. 174.) So where, by virtue of a contract of sale, there has been an equitable conversion of personal into real estate, and the property comes into the possession of a person who is entitled to it both as heir and executor, it immediately becomes in equity, what it is in fact, that is, personal property. It is discharged from the fictitious impression which had been given to it. If the impression of realty which was given to the property in question had *Page 550 
been given by the application of equitable principles, as would have been the case if there had been no statute on the subject, then, as soon as the property was received by the person who alone was interested in it, after he became of full age and was competent to receive it, it would be considered both at law and in equity what it was in fact, that is, personal estate. The guardian could no longer affect the rights of those who might be interested in the estate, and no person whatever would have any right, which the law would acknowledge, to insist that one quality should be impressed on the estate rather than another. What reason then can be given why, in this case, an estate, which, under ordinary circumstances would be regarded as personal, should, in the hands of an absolute and unqualified owner, who was competent to receive and hold it, have an entirely different quality impressed upon it, and should have that quality so inexorably fixed that nothing but a sale, or at least a contract of sale, could make it in law what it was in fact? I think that such an effect cannot be given to the statute. There is nothing in its words or in its spirit which requires such a construction.
But it is said, and it was so held at the special term, that even if the principle contended for by the plaintiffs, that, in order to remove the impression of realty given to the infant's estate, there must be either an actual or an equitable conversion of it into personal property, be untenable, still that the estate will retain the real quality which has been impressed upon it, unless the infant, after he arrives at full age, does some act indicating an intention to change such quality. This view seems to have been suggested by the doctrine of equitable conversion, or, perhaps it may be more properly said, it is founded upon the misapprehension of a rule applicable to personal property impressed with real uses. When the property thus impressed is in the hands of a third person, its character cannot be changed, without some act on the part of the person beneficially interested, indicating an intention to that effect. But when the property is "at home," as it is expressed, that is, when the fund and the uses are united in the same person, no election is necessary. (Pultney *Page 551 
v. Darlington, 1 Bro. C.C. 223; 7 Bro. P.C. 530;Rashleigh v. Master, 1 Ves. jun. 201; Wheldale v.Patridge, 8 id. 227.) In the present case the absolute property was in the possession of the party entitled to it, and, according to the rule of equitable conversion, if it were applicable, the real character which had been impressed upon it was gone.
But even if it had been necessary for the owner of the property after it came into his possession to do some act, indicative of his intention that it should be considered as personal estate, I think that sufficient was done in this case; for, after the bond and mortgage had been received by Forman, he delivered them to his agent in the condition in which they were, that is, as personal property, and authorized him to collect the money due upon them and reinvest it in any way that he might deem safe. Here was as explicit a declaration of intention as could be made by acts, that the property should continue to be what it was in fact, that is, personal estate.
The judgment should be affirmed.