## In re McMILLAN.

(Supreme Court, Appellate Division, Fourth Department. May 6, 1908.)

1. INFANTS—PROPERTY—SALE OF LAND BY ORDER OF COURT—NATURE OF PRO-
CEEDS.

By a general rule of law, as well as the direct provisions of Code Civ.
Proc. § 2359, and also by previous statutes (Laws 1814, p. 128, c. 108, § 9;
Laws 1815, p. 104, c. 106, §§ 5, 6; 3 Banks & Bros. Rev. St. [6th Ed.] p.
202, pt. 3, tit. 2, c. 1, §§ 125, 126; Laws 1864, p. 1002, c. 417, § 10), upon a
sale of real estate of an infant or incompetent person, the proceeds thereof
are deemed property of the same nature as the estate or interest sold
until the infant arrives at full age or the incompetency is removed; the
reason for the rule being that the land of the infant or incompetent has
been sold without his assent, and the character of the property remains
unchanged until the disability has been removed, the rule being pri-
marily for the benefit of the infant or incompetent, but founded to some
extent upon the propriety of keeping unchanged the right of succession.

2. INSANE PERSONS—APPOINTMENT OF COMMITTEE—POWERS OF GENERAL GUARD-
IAN OF INFANT INCOMPETENT.

Ordinarily a committee of the person and estate of the infant is not
appointed, as a general guardian can exercise all the functions of a com-
mittee; but there is no objection to the appointment of a committee of the
person and estate of an infant.

3. SAME—SALE OF LAND DURING INFANCY BY ORDER OF COURT—CONTINUANCE
OF INCOMPETENCY AFTER MAJORITY—NATURE OF PROCEEDS OF SALE.

Under Code Civ. Proc. § 2359, providing that, upon the sale of real es-
tate of an infant or incompetent, the proceeds are deemed property of the
same nature as the estate sold until the infancy or incompetency is re-
moved, where a person whose land is sold during his infancy is an in-
curable incompetent from birth, the nature of the property sold remains
unchanged during his lifetime, and the proceeds do not become personalty.

4. DESCENT AND DISTRIBUTION—COURSE OF DESCENT—PARENTAL LANDS—LANDS
EX PARTE MATERNA.

Under Gen. Laws 1896, p. 620, c. 547 (Real Property Law, § 288), provid-
ing that, where there is no heir entitled to take under either of the pre-
ceding sections, if the inheritance has come to intestate on the part of
his mother, it shall descend to her brothers and sisters and their descend-
ants, section 280 (page 618), providing that in such cases the inheritance
shall include every inheritance by devise, gift, or descent from such
parent, section 286, providing that, where there is no father or mother,
collateral relatives of equal degree shall inherit equally, and section 287,
providing that the brothers and sisters of deceased shall inherit equally
if living, and the representatives of deceased brothers and sisters shall
inherit per stirpes where intestate's property came to him through his
mother, his only heirs being his maternal cousins and a paternal uncle and
aunt—the real estate would pass to the cousins under the statute.

5. SAME—PERSONS ENTITLED AND THEIR SHARES—REMOTE COLLATERALS—DI-
VISION BETWEEN MATERNAL AND PATERNAL KINDRED.

Code Civ. Proc. § 2732, subd. 5, regulating the distribution of an in-
testate person's estate, provides if there be no widow or children, or rep-
resentatives of children, the surplus shall be distributed to the next of
kin of equal degree and to their legal representatives. Subdivision 10 pro-
vides that, where the next of kin are in equal degree to deceased, they
shall take equally. Subdivision 11 provides that they shall take accord-
ing to their respective stocks when of unequal degree. Subdivision 12
(Laws 1898, p. 941, c. 319), provides that representation shall be admitted
among collaterals in the same manner as allowed by law in reference to
real estate. Real Property Law, § 288 (Gen. Laws 1896), provides that,
where there is no heir entitled to take under either of the preceding sec-
tions, if the inheritance came to deceased on the part of his mother, it

shall descend to her brothers and sisters and their descendants, and, if none, to the brothers and sisters of the father, and in all cases mentioned in this section the inheritance shall descend to the brothers and sisters of the father or mother or to their descendants as if they had been brothers and sisters of intestate. Respondents claim all of the personalty, they being the children of a paternal uncle of deceased and a paternal aunt, as against appellants, who are maternal cousins of deceased. *Held*, the ancestors of appellants, being an uncle and aunt, were of the same degree as respondents, and their representatives may possibly take under subdivision 5, but, in any event, they would take under subdivision 12 (Laws 1898, p. 941, c. 319), and the estate should be distributed under subdivision 10, so that the paternal aunt will receive one share, the children of the paternal uncle one share, the descendants of a maternal aunt one share, and descendants of a maternal uncle one share.

McLennan, P. J., dissenting.

Appeal from Livingston County Court.

Proceeding for final settlement of the account of Luna A. McMillan, as committee of the person and estate of Charles E. J. McMillan, an incompetent person, now deceased. From a part of the judgment of the County Court directing distribution of the real and personal estate of deceased, some of the heirs appeal. Judgment reversed, and remitted for distribution as directed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

George B. Adams and Lockwood R. Doty, for appellants.
E. A. Nash and George W. Atwell, for respondents.

SPRING, J. Charles E. J. McMillan, an incompetent person, was born April 26, 1855. He owned a one-ninth interest in certain real estate in the city of New York, which was sold in pursuance of judgments in the Supreme Court in April, 1865, for the sum of $62,430 and the leaseholds for $7,850. The incompetent inherited his one-ninth interest in said premises from his mother, who had died intestate in 1855. Charles McMillan, the father of the incompetent, was duly appointed his general guardian, and on the 24th of July, 1866, an order was granted directing the chamberlain of the city of New York, with whom the avails of the sale belonging to said infant had been deposited, to pay the same to said general guardian, and to assign the securities in his hands belonging to said infant. Obedient to this order, on the 27th day of March, 1867, the chamberlain transferred to the general guardian one mortgage for $2,200, one for $1,550, and paid him in cash $1,211.71, in all $4,961.71. Said incompetent became of age April 26, 1876, and was then an imbecile and continued to be until his death. After his majority, no proceedings were instituted for the appointment of a committee of the person and estate until September, 1886, when by the inquisition of a jury he was found to be "an imbecile and of unsound mind, so that he was incapable of governing himself or the management of his lands or tenements, goods, and chattels, and that he had been in the same state of imbecility and unsoundness of mind since his birth." The father was thereupon appointed the committee of the person and estate of the incompetent, and acted in that capacity until his death January 7, 1890. On Febru-

ary 24th following Luna A. McMillan was appointed committee, holding the position at the time of the death of the incompetent December 29, 1904. The intestate left him surviving no widow or lineal descendants, and no brothers or sisters or other descendants, but a paternal uncle, James McMillan, who died intestate during the pendency of this proceeding, leaving children, and of whose estate an administrator has been appointed and appears on this appeal, a paternal aunt, Luna A. McMillan, four maternal cousins, children of a brother of the mother of the incompetent, and other collaterals also in the maternal line. The entire principal of the estate of the incompetent intestate at the time of the accounting by the committee amounted to $8,950, of which the sum of $3,650 was the avails of real estate sold in the partition action above mentioned, and $300 derived from a sale of other lands belonging to him, and $5,000, a legacy by the will of his maternal grandfather and which was paid over to the committee in June, 1891. After the costs and expenses allowed there were left for distribution $8,192.-38. The court below held that all this property was personal estate, and only the uncle and aunt were entitled to share in it, basing his decision in directing distribution upon Matter of Davenport, 172 N. Y. 454, 65 N. E. 275.

It is a general rule and regulated by statute in this state that, upon a sale of real estate of an infant or incompetent person, "the proceeds are deemed property of the same nature as the estate or interest sold, until the infant arrives at full age, or the incompetency is removed." Section 2359, Code Civ. Proc. This has long been a statutory provision. Laws 1814, p. 128, c. 108, § 1; Laws 1815, p. 104, c. 106, §§ 5, 6; 3 Banks & Bros. Rev. St. (6th Ed.) p. 202, pt. 3, tit. 2, c. 1, §§ 125, 126; Laws 1864, p. 1002, c. 417, § 10; Ford et al. v. Livingston et al., 140 N. Y. 162, 167, 35 N. E. 437; Walrath v. Abbott, 75 Hun, 445, 451, 27 N. Y. Supp. 529. The learned county judge, while recognizing this principle, held it was only a fiction, and, when the infant reached his majority, the character of his property changed to personalty, although he was an imbecile and remained so until his death. The philosophy of the rule adverted to is that the land of the infant or incompetent has been sold without his volition or intelligent assent, and the character of his property must remain unchanged until the disability has been removed. In a note to 3 Pomeroy's Equity Jurisprudence, p. 135, § 1167, cited approvingly in Matter of Department of Public Parks, 89 Hun, 529, 530, 35 N. Y. Supp. 332, 333, the principle is set forth in this way:

"Where land has been taken, not by voluntary negotiation, but by compulsory proceedings authorized by statute, and the money is paid into court, it continues to be real estate until it is taken out by some person having a right to elect to treat it as money; that is, by some person sui juris who is an unfettered owner. If the owner is an infant or a lunatic, or if the land is subject to a settlement, the money necessarily retains its character as real estate."

The statute fixes the expiration of infancy arbitrarily at 21 years, and of incompetency when intelligence supervenes. If infancy and incompetency coexist during minority, and the mental incapability remains after infancy has passed, the reason for the retention of

the character of the property at the time of the sale is made is still present. The rule is primarily for the benefit of the incompetent or infant, and yet, as there has long been a difference in the laws of descent and of distribution, it is founded to some extent upon the propriety of keeping unchanged the right of succession to the property in the event of the death of the infant or incompetent. Forman v. Marsh, 11 N. Y. 544; Laws 1815, p. 104, c. 106, § 5; Horton et al. v. McCoy, 47 N. Y. 21; Story's Equity Juris. § 1357; Shumway v. Cooper, 16 Barb. 556. Ordinarily a committee of the person and estate of an infant is not appointed, for the general guardian can exercise all the functions of a committee. There is, however, no legal objection to the appointment of a committee of the person and estate of an infant. Francklyn v. Sprague, 121 U. S. 215, 229, 7 Sup. Ct. 951, 30 L. Ed. 936, and cases cited; In re Chattin, 16 N. J. Eq. 496. If a committee had been appointed of the incompetent McMillan just before he attained his majority, I assume the infant, even by legal fiction, would never have assumed the control of his property, and the disability would have been a continuous one, although in two different capacities. Ten years elapsed after he became 21 before a committee was appointed. During all that time the disability continued. The property remained in the custody of the general guardian, who was the father of the infant. No settlement was ever had by him as guardian; and, when he was appointed committee, he held the property, and there was no actual change in his management or control. The avails of the real estate were in his hands as before. Had a committee of the estate of the incompetent been appointed after the sale in the partition action and the proceeds paid over to him, the heirs at law would be entitled to the estate upon his death, rather than his next of kin. The reason of this is because the disability, his mental unsoundness, had continued to the time of his death and the property remained in effect real estate, although consisting of money or its equivalent in kind. The lunatic was not capable of committing any act for the purpose of changing the nature of the property. In this instance a committee during infancy was unnecessary for the guardian performed all the duties which could have been required of a committee. The imbecility, however, was continuous. The imbecile never exercised any control over the property. It was never in his possession. He had no lucid interval. He was an idiot from birth. If a proceeding had been commenced immediately after the infant arrived at his majority to have him judicially declared incompetent, and 30 days had elapsed before the appointment of a committee, the character of the property would have changed to personalty on the day the incompetent attained his majority, if the learned county judge is correct in his position. If, however, the proceeding had been earlier set in motion and terminated at any time during the infancy, the avails of the sale would have remained real estate. Where an interest in real estate of an infant upwards of 20 years of age is sold pursuant to a judgment in a partition action, and the complaint alleges and the proof shows that the infant was an imbecile, as well as an infant, and the judgment so recites, the proceeds of the sale would continue to be real estate until each disability disappears. The result of these

complications, any of which might arise, it seems to me makes it necessary to hold where a person, whose land is sold during his infancy, is an incurable incompetent from birth, that the nature of the property remains unchanged during his lifetime.

Much is made of the proposition that it is a mere fiction whereby the property retains its character as real estate, when in kind personalty, and then again is changed when the infant becomes of age. The preference given to real property over personal property, and many of the legal requirements pertaining to its conveyance and management are fictions, and yet they are retained in their vigor, and must be observed. The counsel for the respondents rely upon Forman v. Marsh, 11 N. Y. 544. In that case the land of Forman, the infant, was sold and a bond and mortgage executed to his guardian for $3,-000 to secure the purchase money. After the infant became of age, he settled with his guardian, giving him a receipt in full. There was due him some money which was not in fact paid over, and the bond and mortgage were not assigned to him. The guardian had them at the settlement, and a general power of attorney was given to the guardian as an individual to collect these moneys and reinvest the principal, and take charge of the same for Forman. A year later Forman died, and a contest arose over the character of the property invested in this bond and mortgage; the heirs at law claiming it was real estate. The Court of Appeals held otherwise, on the ground that Forman, after he attained his majority, came into possession of the property, and exercised actual dominion over it. The court used this language at page 548:

"It will be remembered that in this case the infant, after he arrived at the age of 21 years, came into the possession of the bond and mortgage, executed an instrument in which he acknowledged the receipt of them, and discharged his guardian from all claims against him in that capacity. The relation of guardian and ward has thus become terminated. All the ends contemplated by the statute had been accomplished. The course of descent had not been changed by any act of the guardian; and the infant had arrived at that age when the law regards him as competent to assume the entire control of his property. At this time the bond and mortgage were personal property in fact, and I think that they should be so regarded in law."

Inasmuch as the real estate came to the incompetent through his mother, it passes, by the statutes of descent, to her descendants, who are the appellants in this case. Real Property Law, Laws 1896, p. 620, c. 547, § 288. See, also, sections 280, 286, 287.

The court below has held that all the personal property should be distributed, one share among the children of James McMillan, the paternal uncle of the incompetent, and the other share to his paternal aunt, Luna A. McMillan, excluding the cousins from any participation in the distribution of the estate, relying upon Matter of Davenport, 172 N. Y. 454, 65 N. E. 275. Section 2732 of the Code of Civil Procedure regulates the order of distribution of an intestate's personal estate. Subdivision 5 provides:

"If there be no widow, and no children, and no representatives of a child, the whole surplus shall be distributed to the next of kin, in equal degree to the deceased, and their legal representatives."

Subdivision 10 provides that:

"Where the descendants or next of kin . * * * are all in equal degree to the deceased, their shares shall be equal."

Subdivision 11, when of unequal degree, "by their respective stocks," thus inheriting in their own right, in equal shares; if by representation, the share of the parent. Subdivision 12, as it was in force at the time of the death of the intestate (chapter 319, p. 941, Laws 1898), reads as follows:

"Representation shall be admitted among collaterals in the same manner as allowed by law in reference to real estate."

Before chapter 319, p. 941, Laws 1898, became the law, representation was not admitted after brothers' and sisters' children; and by chapter 539, p. 1208, Laws 1905, this limitation was restored, but chapter 319, p. 941, Laws 1898, was in effect when the intestate died in December, 1904.

We must, therefore, refer to the real property law providing for the order of descent to enable effect to be given to this subdivision. The intestate left no children or brothers or sisters, or descendants of them. Six of the appellants are the next of kin of the intestate, if at all, as the descendants of Albert Journeay, a brother of the decedent's mother, and Horace C. Hurlburt is a grandson and sole descendant of Sarah Acly, a sister of his mother. By representation, therefore, if that rule is to prevail, the six take from the brother of the intestate's mother, and one from the sister. James McMillan, now deceased, was a brother of the father of the intestate, and Luna A. McMillan, a sister of his father, and were therefore one degree nearer than the first cousins, who are the children of Albert Journeay. Section 288 pertains to a case where there is no heir entitled to take under the preceding sections. The first subdivisions are applicable where the property came from the father. Subdivision 4, so far as pertinent, reads as follows:

"But if the inheritance shall have come to the intestate on the part of his mother, it shall descend to her brothers and sisters and their descendants; and if there be none, to the brothers and sisters of the father and their descendants, in the manner aforesaid. * * * In all cases mentioned in this section the inheritance shall descend to the brothers and sisters of the intestate's father or mother, as the case may be, or to their descendants in like manner as if they had been the brothers and sisters of the intestate."

In the Matter of Davenport, supra, the decedent left no brother or sister, but a nephew and niece, children of a deceased brother, uncles and aunts of the same degree, and other collateral relatives more remote. The Court of Appeals held that the children of the deceased brother inherited by virtue of section 287, which provides that children of a deceased brother or sister shall inherit. Section 288 is only operative where there is no heir entitled to take under the preceding sections, and there were heirs entitled to take by section 287. The uncles and aunts were in equal degree with the nephew and niece, and consequently they all took by subdivisions 5 and 10. In concluding its opinion the court adds significantly:

"As already pointed out, under the real property law, brothers and sisters and their descendants inherit in the first instance, and, if there be none, then the aunts and uncles of the intestate and their descendants take."

The distinction in the present case is that there are no descendants of brothers and sisters, and there was no heir entitled to take under any of the sections preceding section 288. The scope of this decision has been frequently considered by other courts, and especially in the opinions of surrogates. Matter of De Voe, 107 App. Div. 245, 94 N. Y. Supp. 1129; Matter of Dunning's Estate, 48 Misc. Rep. 483, 96 N. Y. Supp. 1110; Matter of Ebbets' Estate, 43 Misc. Rep. 575, 89 N. Y. Supp. 544; Matter of Hadley's Estate, 43 Misc. Rep. 579, 89 N. Y. Supp. 545; Matter of Fleming, 48 Misc. Rep. 589, 98 N. Y. Supp. 306. In Matter of Dunning's Estate, supra, the next of kin were two aunts and five cousins who were descendants of deceased uncles and aunts, and the cousins were held to participate in the distribution by representation. Therefore, to recapitulate, in the Davenport Case there were two children of a deceased brother who inherited directly, and not by representation. The uncles and aunts were of equal degree with the descendants of the brother and consequently inherited because of that fact. Subdivisions 5, 10. The ancestors of the appellants are an uncle and aunt, so of the same degree as the respondents, and consequently their representatives may possibly take by virtue of subdivision 5 of section 2732, and in any event in pursuance of chapter 319, p. 941, Laws 1898, already adverted to. This act was passed for the purpose of changing the existing statute and placing collateral distributees, who took by representation, on a parity with heirs at law of a like degree. The act was not passed, and then the former limitation restored by chapter 539, p. 1208, Laws 1905, unless a definite change had been made. That change applies to the present situation, or no effect can be given to it that I am able to discover.

The judgment should be reversed, and the matter remitted to the County Court, directing it to divide the avails of the real estate, except said $300, among the appellants in accordance with the foregoing opinion, and to distribute the personal estate, including said $300, among all the parties, pursuant to subdivision 10 of section 2732 of the Code of Civil Procedure, as follows: The respondent Luna A. McMillan one share; the children of James McMillan, one share; the next of kin of Albert Journeay, one share, the Ilsleys taking the share of their mother; and one share to Horace C. Hurlburt, the descendant of Sarah Acly, a deceased sister of the mother of the intestate. The costs of all parties on this appeal are to be paid from that part of the fund in the hands of the committee which is held to be personal estate. So ordered. All concur, except McLENNAN, P. J., who dissents.