(158 App. Div. 818.)

## WILLIAMS v. POST et al.

(Supreme Court, Appellate Division, First Department.   November 7, 1913.)

1. ABSENTEES (§ 6*)—COLLECTION OF ASSETS—PETITION.

An administrator of infant heirs, petitioning to have their interest in the proceeds of land, sold in partition on deposit with the State Treasurer under order of court to the credit of the action, delivered to petitioner, must show the death of the infants at such time as would give

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

him title to the fund, and the issuance of letters of administration on the infants' estates cannot operate as an adjudication that they died after reaching their majority.

[Ed. Note.—For other cases, see Absentees, Cent. Dig. §§ 12, 13; Dec. Dig. § 6.*]

2. CONVERSION (§ 7*)—NATURE—PERSONAL PROPERTY.

The proceeds of infants' interest in land held as tenants in common and sold at a partition sale would become personal property if and when the infants attained their majority.

[Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 13–15; Dec. Dig. § 7.*]

3. ABSENTEES (§ 6*)—COLLECTION OF ASSETS—EVIDENCE.

Evidence in application by an administrator in 1913 to obtain moneys paid into court as the share of his intestates in the proceeds of a partition sale of land in 1838 *held* insufficient to show that the decedents, who were infants of five and seven years when the decree was entered, survived until they reached majority.

[Ed. Note.—For other cases, see Absentees, Cent. Dig. §§ 12, 13; Dec. Dig. § 6.*]

4. DEATH (§ 2*)—PRESUMPTIONS.

One who disappears from his home or ordinary place of residence and ceases to communicate with relatives or friends and is not heard from and cannot be discovered with reasonable inquiry will be presumed to be dead after a lapse of seven years.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 1–3; Dec. Dig. § 2.*]

5. EXECUTORS AND ADMINISTRATORS (§ 39*)—TITLE OF ADMINISTRATOR—LAND.

An administrator could obtain no title to land after it ceased to be personalty and was converted into land.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 280, 285–294; Dec. Dig. § 39.*]

6. DESCENT AND DISTRIBUTION (§ 30*)—PERSONS TAKING.

Under Decedent Estate Law, § 84 (Consol. Laws 1909, c. 13), providing that if the mother be dead an inheritance descending from a child on the mother's part shall go to the father for life, and the reversion to the brothers and sisters, and, if there be no brothers and sisters or their descendants, shall go to the father in fee, the father would take the entire fund representing realty where the children died without issue after their mother's death and left no brother or sister or descendant of such.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 84–90; Dec. Dig. § 30.*]

Appeal from Special Term, New York County.

Proceeding by James Williams against Sylvanus Post and others. From an order granting the petition of Charles W. Moon, as administrator, and directing the State Comptroller to draw and deliver to petitioner's attorney in fact his warrant on the Treasurer for certain moneys in the hands of the State Comptroller to the credit of the action for the benefit of certain decedents, the People and others appeal. Reversed, and proceeding dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Robert P. Beyer, Deputy Atty. Gen., for appellants.
George W. Carr, of New York City, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LAUGHLIN, J. One Jacob Post, who died in the year 1835 or 1836, and the plaintiff owned a farm as tenants in common, and after Post's death a suit was brought in the Court of Chancery for a partition or sale thereof. Post left a widow and three children and two grandchildren, being the children of a deceased daughter, Mary Brown, as his heirs at law and next of kin. They were parties to the action. Final judgment under which the premises were sold and the proceeds, with the exception of that part representing the interest of the grandchildren, were distributed, was entered in 1838. The grandchildren were Jacob Levi Brown and Mary Elizabeth Brown, and they were then five and seven years of age, respectively. The proceeds of the sale representing their interests were deposited with register of the court and subsequently transferred to the chamberlain of the city of New York and were thereafter duly transferred by orders of the Supreme Court and of the Appellate Division to the custody of the Treasurer of the state of New York to the credit of this action, subject to the warrant of the State Comptroller to be drawn pursuant to an order to be made by the court under section 751 of the Code of Civil Procedure. The petitioner applies for this fund on the theory that said grandchildren are dead, and he shows that nothing has been known of, or heard from, them by their relatives since the final decree of the court in 1838. Letters of administration on the estates of the two grandchildren were duly issued to the petitioner on the 10th day of March, 1913, by the Surrogate's Court of the county of New York.

[1] It is not at all clear that that was even an adjudication binding on this application that the grandchildren are dead (see Carroll v. Carroll, 60 N. Y. 121, 19 Am. Rep. 144; Marks v. Emigrant Industrial Savings Bank, 122 App. Div. 661, 107 N. Y. Supp. 491, and cases cited); but in no event was it an adjudication with respect to the time of their death, and it was incumbent upon the petitioner to show death at a time which would give him title to the fund (Eckersley v. Curran, 143 N. Y. Supp. 662, Appellate Division, Second Department, September 23, 1913).

[2] It is conceded that the fund when first deposited in court remained real estate, but under the authorities it became personal property if the infants lived and attained their majority. Horton v. McCoy, 47 N. Y. 21; Matter of McMillan, 126 App. Div. 155, 110 N. Y. Supp. 622.

[3] The petition to the Surrogate's Court for the appointment of administrators of the estates of the deceased grandchildren was made by their first cousins and first cousins once removed on their mother's side, and it is shown by the petition and by the affidavit of the attorney for the administrator that the records and proceedings in the partition suit show that the grandchildren, whose interests are involved in this proceeding, at the time of the final decree in the partition suit were living with their grandmother, the widow of their grandfather, from whom they inherited the estate, in the city of New York. It further appears by said petition and by the affidavits of two of the petitioners, none of whom, however, ever knew or heard of the deceased grandchildren, that their grandmother, with whom it otherwise ap-

pears, as already stated, the grandchildren resided in 1838, continued to reside, from the earliest recollection of the affiants, one of whom was 72 years of age in 1912, with her son, their uncle, at Uniontown, near Hastings on the Hudson, N. Y., until 1870, when she died and was buried at Dobbs Ferry, N. Y.; that from their earliest recollection they talked with her concerning their relatives and that she never made any allusion to the deceased grandchildren, from which they infer and allege on information and belief that said grandchildren must have died soon after 1838 and within seven years thereafter, and before attaining their majority, intestate, without issue and unmarried.

[4] The learned Deputy Attorney General contends that on these facts there is a legal presumption that the infants died within seven years of the final proceedings in the partition suit, and he cites as authority therefor the cases of Barson v. Mulligan, 191 N. Y. 306, 84 N. E. 75, 16 L. R. A. (N. S.) 151, and Matter of Benjamin, 155 App. Div. 233, 139 N. Y. Supp. 1091. Those decisions establish the rule that the death of a person disappearing from home or where he resided without communicating with relatives or friends, and without anything being heard from him, or discoverable on reasonable inquiry, will be presumed after the lapse of seven years. The facts were somewhat different in the proceeding at bar, for there is no evidence that the grandchildren ever *left* the place where they were living in 1838. That, however, I think, rather strengthens than weakens the case, for it would seem to be a reasonable inference that, if they were living in this vicinity, their cousins, who appear to have been on intimate terms with their grandmother, would have some recollection of, or information concerning, them; and, as one of the cousins was born in 1840, she would probably have some knowledge or information on the subject, had they been living as late as 1845. However, it is not necessary to decide whether or not, on these facts, it is to be presumed that they died within seven years after 1838. It is sufficient to defeat the application if there is a presumption that they died before attaining the age of 21 years. Had they lived, one would have become 21 in 1852 and the other in 1854. One of the cousins who makes affidavit was 12 years of age in 1852, and, if the grandchildren were then living with their grandmother, it is reasonable to infer that she would remember the fact.

[5] It was, as already stated, however, incumbent upon the petitioner to show that the grandchildren lived to attain their majority, for otherwise, since the fund remained real estate until that time, he obtained no title thereto. Eckersley v. Curran, supra; Priester v. Hobloch, 70 App. Div. 256, 75 N. Y. Supp. 405; Dunning v. Ocean Nat. Bank, 61 N. Y. 497, 19 Am. Rep. 293; Corley v. McElmeel, 149 N. Y. 228, 43 N. E. 628; Matter of Monroe, 142 N. Y. 484, 37 N. E. 517.

The learned counsel for the respondent attempts to support the order on the further ground that all of the heirs at law and next of kin of the grandchildren on their mother's side, who were of full age, excepting those representing a one-eighth interest, joined in the application to the Surrogate's Court for the appointment of the admin-

istrator for the sole purpose of collecting these moneys. The order cannot be sustained on that ground, for there is no assignment of the interest of the heirs at law and next of kin to the administrator.

There is, however, another fatal objection to the order. Counsel for appellants contends that the interest of the deceased grandchildren descended to their father, who survived them and appears to have been living until 1845 at least, and the only evidence tending to show his death at or about that time is hearsay and not even family tradition, for it was not shown that the individual who so stated to the attorney for the petitioner was related to the decedent. It is contended by counsel for the appellants that, although the property descended to the decedents from the grandparent on the mother's side, their father took the entire estate because the inheritance did not come to them on the part of their mother, since it came, not from her, but from the grandparent, and he cites in support of that contention the statute (section 84, Decedent Estate Law; chapter 13, Consol. Laws, being chapter 18, Laws of 1909), which provides in part:

"If the intestate die without lawful descendants, and leave a father, the inheritance shall go to such father, unless the inheritance came to the intestate on the part of his mother, and she be living."

It is, however, provided by subdivision 2 of section 80 of the same law that:

"The expressions 'where the inheritance shall have come to the intestate on the part of the father' or 'mother,' as the case may be, include every case where the inheritance shall have come to the intestate by devise, gift or descent from the parent referred to, or from any relative of the blood of such parent."

The corresponding provisions of the Revised Statutes as they existed in 1838, from which these statutory provisions were derived, were construed by the Court of Appeals in Morris v. Ward, 36 N. Y. 587, and it was there held that where an estate in reversion was conveyed as a gift to a great-grandson by his great-grandfather on his mother's side, and he died intestate without issue, his father took only an estate for life in the reversion.

[6] Under another provision of said section 84 of the Decedent Estate Law, it is perfectly clear that if the grandchildren died without issue, unmarried, and intestate, leaving their father surviving, he would take the entire fund on the death of the surviving grandchild, for their mother was dead, and they left neither brother nor sister nor any descendant of a brother or sister; and, if it had become personal property, he would likewise take it. Section 98, subd. 7, Decedent Estate Law. The evidence, therefore, is insufficient to show that the heirs or next of kin of the grandchildren on their mother's side took the fund in question.

It follows that the order appealed from should be reversed, with $10 costs and disbursements, and the proceeding dismissed, with $10 costs. All concur.