JAMES WILLIAMS, Plaintiff, v. SYLVANUS POST and Others, Defendants.   THE PEOPLE OF THE STATE OF NEW YORK and Others, Appellants; CHARLES W. MOON, as Administrator, etc., of MARY ELIZABETH BROWN, Deceased, and of JACOB LEVI BROWN, Deceased, Defendants, Respondent.

(Supreme Court, First Department, November 7, 1913.)

DECEDENT'S ESTATE—PROCEEDS OF PARTITION ACTION DEPOSITED WITH STATE TREASURER FOR BENEFIT OF INFANTS WHO HAVE DISAPPEARED—APPLICATION TO COMPEL STATE COMPTROLLER TO ISSUE WARRANT—ISSUANCE OF LETTERS OF ADMINISTRATION NOT RES ADJUDITATA ON SUCH APPLICATION —FAILURE TO PROVE TIME OF INFANT'S DEATH—EQUITABLE CONVERSION —INFANT'S SHARE IN PROCEEDS OF PARTITION REMAIN REALTY UNTIL MAJORITY—BURDEN TO SHOW THAT INFANTS ATTAIN MAJORITY—DESCENT AND DISTRIBUTION—WHEN FATHER TAKES PROPERTY INHERITED FROM HIS CHILD'S MATERNAL GRANDPARENT.

*It seems,* that the granting of letters of administration upon the estate of a person who has disappeared and has not been heard from for many years is not an adjudication as to the death of that person, which is binding on an application to compel the State Comptroller to draw a warrant on the State Treasurer for moneys deposited with him and belonging to the alleged decedent.

In any event, the determination of the surrogate in granting letters of administration does not determine the date of the decedent's death, and a petitioner, seeking to recover the moneys deposited with the State Treasurer, must show that the decedent died at a time which would give him title to the fund.

The share of an infant in the proceeds of lands sold in a partition action and deposited in court remains real estate, but becomes personal property if the infant live and attain his majority.

An administrator seeking to recover from the State Treasurer moneys originally deposited to the credit of infants who thereafter disappeared and have not been heard from for many years must establish that they lived to attain their majority, for otherwise, since the fund remained real estate until that time, he obtained no title thereto.

Such application by the administrator should not be granted merely because all the heirs at law and next of kin of the infants joined in the application for his appointment in order to collect the moneys, where there is no assignment to him of the interest of the heirs at law and next of kin.

Where a grandchild takes property from his maternal grandparent at a time when his mother is dead, and dies without issue, unmarried and intestate, leaving a father surviving but neither brother, sister nor a descendant of a brother or sister, the father takes the entire property whether real or personal.

APPEAL by The People of the State of New York and others from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 6th day of June, 1913, granting the petition of Charles W. Moon, as administrator of the goods, chattels and credits of Mary Elizabeth Brown, deceased, and of Jacob Levi Brown, deceased, defendants herein, and directing the Comptroller of the State of New York to draw and deliver to the attorney in fact for the petitioner his warrant on the

Treasurer of the State of New York for seven-eighths of the moneys in the hands of the State Comptroller to the credit of this action for the account and benefit of said decedents.

Robert P. Beyer, Deputy Attorney-General, for the appellants.

George W. Carr, for the respondent.

LAUGHLIN, J.—One Jacob Post, who died in the year 1835 or 1836, and the plaintiff owned a farm as tenants in common, and after Post's death a suit was brought in the Court of Chancery for a partition or sale thereof. Post left a widow and three children, and two grandchildren, being the children of a deceased daughter, Sarah Brown, as his only heirs at law and next of kin. They were parties to the action. Final judgment, under which the premises were sold and the proceeds, with the exception of that part representing the interest of the grandchildren, were distributed, was entered in 1838. The grandchildren were Jacob Levi Brown and Mary Elizabeth Brown, and they were then five and seven years of age respectively. The proceeds of the sale representing their interests were deposited with the register of the court and subsequently transferred to the chamberlain of the city of New York, and were thereafter duly transferred by orders of the Supreme Court and of the Appellate Division to the custody of the Treasurer of the State of New York to the credit of this action, subject to the warrant of the State Comptroller, to be drawn pursuant to an order to be made by the court under section 751 of the Code of Civil Procedure.

The petitioner applies for this fund on the theory that said grandchildren are dead, and he shows that nothing has been known of, or heard from, them by their relatives since the final decree of the court in 1838. Letters of administration

on the estates of the two grandchildren were duly issued to the petitioner on the 10th day of March, 1913, by the Surrogate's Court of the county of New York. It is not at all clear that that was even an adjudication binding on this application that the grandchildren are dead (See Carroll v. Carroll, 60 N. Y. 121; Marks v. Emigrant Industrial Savings Bank, 122 App. Div. 661, and cases cited); but in no event was it an adjudication with respect to the time of their death, and it was incumbent upon the petitioner to show death at a time which would give him title to the fund. (Eckersley v. Curran, 158 App. Div. 440.) It is conceded that the fund when first deposited in court remained real estate, but under the authorities it became personal property if the infants lived and attained their majority. (Horton v. McCoy, 47 N. Y. 21; Matter of McMillan, 126 App. Div. 155.)

The petition to the Surrogate's Court for the appointment of administrators of the estates of the deceased grandchildren was made by their first cousins and first cousins once removed on their mother's side, and it is shown by the petition and by the affidavit of the attorney for the administrator that the records and proceedings in the partition suit show that the grandchildren, whose interests are involved in this proceeding, at the time of the final decree in the partition suit were living with their grandmother, the widow of their grandfather, from whom they inherited the estate, in the city of New York. It further appears by said petition and by the affidavits of two of the petitioners, none of whom, however, ever knew or heard of the deceased grandchildren, that their grandmother with whom it otherwise appears, as already stated, the grandchildren resided in 1838, continued to reside, from the earliest recollection of the affiants, one of whom was seventy-two years of age in 1912, with her son, their uncle, at Uniontown near Hastings-on-the-Hudson, N. Y., until 1870, when she died, and was buried at Dobbs Ferry, N. Y.; that, from their earliest

recollection, they talked with her concerning their relatives, and that she never made any allusion to the deceased grandchildren, from which they infer and allege on information and belief that said grandchildren must have died soon after 1838, and within seven years thereafter, and before attaining their majority, intestate, without issue and unmarried.

The learned Deputy Attorney-General contends that on these facts there is a legal presumption that the infants died within seven years of the final proceedings in the partition suit, and he cites as authority therefor the cases of Barson v. Mulligan (191 N. Y. 306) and Matter of Benjamin (155 App. Div. 233). Those decisions establish the rule that the death of a person disappearing from home or where he resided without communicating with relatives or friends, and without anything being heard from him, or discoverable on reasonable inquiry, will be presumed after the lapse of seven years. The facts were somewhat different in the proceeding at bar, for there is no evidence that the grandchildren ever *left* the place where they were living in 1838. That, however, I think, rather strengthens than weakens the case, for it would seem to be a reasonable inference that, if they were living in this vicinity, their cousins, who appear to have been on intimate terms with their grandmother, would have some recollection of or information concerning them; and, as one of the cousins was born in 1840, she would probably have some knowledge or information on the subject had they been living as late as 1845. However, it is not necessary to decide whether or not, on these facts, it is to be presumed that they died within seven years after 1838. It is sufficient to defeat the application if there is a presumption that they died before attaining the age of twenty-one years. Had they lived, one would have become twenty-one in 1852, and the other in 1854. One of the cousins who makes affidavit was twelve years of age in 1852, and if the grandchildren were then living with their grandfather, it is reasonable to infer

that she would remember the fact. It was, as already stated, however, incumbent upon the petitioner to show that the grandchildren lived to attain their majority, for otherwise, since the fund remained real estate until that time, he obtained no title thereto. (Eckersley v. Curran, *supra;* Priester v. Hohloch, 70 App. Div. 256; Dunning v. Ocean Nat. Bank, 61 N. Y. 497; Corley v. McElmeel, 149 id. 228; Matter of Monroe, 142 id. 484.)

The learned counsel for the respondent attempts to support the order on the further ground that all of the heirs at law and next of kin of the grandchildren on their mother's side, who were of full age, excepting those representing a one-eighth interest, joined in the application to the Surrogate's Court for the appointment of the administrator, for the sole purpose of collecting these moneys. The order cannot be sustained on that ground, for there is no assignment of the interest of the heirs at law and next of kin to the administrator.

There is, however, another fatal objection to the order. Counsel for appellants contends that the interest of the deceased grandchildren descended to their father, who survived them and appears to have been living until 1845, at least, and the only evidence tending to show his death at or about that time is hearsay, and not even family tradition, for it was not shown that the individual who so stated to the attorney for the petitioner was related to the decedent. It is contended by counsel for the appellants that, although the property descended to the decedents from the grandparent on the mother's side, their father took the entire estate because the inheritance did not come to them on the part of their mother, since it came, not from her, but from the grandparent, and he cites in support of that contention the statute (Decedent Estate Law [Consol. Laws, chap. 13; Laws of 1909, chap. 18], § 84), which provides in part: " If the intestate die without lawful descendents, and leave a father, the inheritance

shall go to such father, unless the inheritance came to the intestate on the part of his mother, and she be living." It is, however, provided by subdivision 2 of section 80 of the same law that "The expressions 'Where the inheritance shall have come to the intestate on the part of the father' or 'mother,' as the case may be, include every case where the inheritance shall have come to the intestate by devise, gift or descent from the parent referred to, or from any relative of the blood of such parent." The corresponding provisions of the Revised Statutes (1 R. S. 751, § 5, as amd. by Laws of 1830, chap. 320, § 13; 1 R. S. 755, § 29) as they existed in 1838, from which these statutory provisions, through the former Real Property Law (Gen. Laws, chap. 46 [Laws of 1896, chap. 547], §§ 284, 280), were derived, were construed by the Court of Appeals in Morris v. Ward (36 N. Y. 587), and it was there held that where an estate in reversion was conveyed as a gift to a great grandson by his great grandfather on his mother's side, and he died intestate without issue, his father took only an estate for life in the reversion. Under another provision of said section 84 of the Decedent Estate Law, and the statutes (*supra*) from which it was derived, it is perfectly clear that if the grand-children died without issue, unmarried and intestate, leaving their father surviving, he would take the entire fund on the death of the surviving grandchild, for their mother was dead, and they left neither brother nor sister nor any descendant of a brother or sister; and if it had become personal property he would likewise take it. (Decedent Estate Law, § 98, subd. 7; Code Civ. Proc. § 2732, subd. 7, as amd. by Laws of 1893, chap. 686; 2 R. S. 96, 97, § 75, subd. 7.) The evidence, there-fore, is insufficient to show that the heirs or next of kin of the grandchildren on their mother's side took the fund in question.

It follows that the order appealed from should be reversed, with ten dollars costs and disbursements, and the proceeding dismissed, with ten dollars costs.

INGRAHAM, P. J., McLAUGHLIN, CLARKE and SCOTT, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and proceeding dismissed, with ten dollars costs.