63 271
4ap358

## THACKER *vs.* HENDERSON.

A guardian in socage has the right to make a lease of the lands of his ward, in his own name; and one so made will bind the infant as effectually as if made in his name.

A general guardian has, as such, the same power, in that respect, as a guardian in socage.

For injuries to the premises covered by the covenants in a lease, the minor, as owner in fee, has no right of action, except upon the lease itself. Only one action can be maintained, for such injuries, and that action must be on the lease.

A lease executed by a guardian, of his ward's land, is assignable; and the assignee can recover damages for breaches of all covenants therein which may be assigned; provided he is also owner of the reversion. This embraces covenants by a lessee to work the farm in a good farmer like manner, to keep it in good condition, to seed down a part, &c. &c. MORGAN, J., dissented.

The contract of a guardian for the *sale* of his ward's real estate is wholly unauthorized, and will not bind either the ward or his estate; except so far as the guardian has the power to deal with the possession.

If a lease executed by a guardian does not cover the whole period of the ward's minority, then there is a reversionary interest in the guardian, which he has a right to assign.

Such interest will pass under a contract of sale, executed by the guardian and approved by the court; and the purchaser will have such a reversionary interest in the premises as will enable him to recover damages for an injury to such interest.

Although the assignee of a lease, only, cannot recover for injuries to the reversion, yet where such assignee is also the owner of the reversion, he may recover for such injuries.

APPEAL, by the plaintiff, from a judgment of nonsuit ordered at the circuit.

The action was brought to recover damages for the breach of a contract by the defendant, in not working and conducting a farm according to an agreement or lease set out in the complaint. The answer set up, 1st. A general denial. 2d. That the farm &c. leased, belonged to one Henry N. Adams, an infant, and that he was the owner in fee thereof, and that said lease was made without any legal right on the part of the lessor to make the same. That the violation of said lease consisted of injuries to the

freehold and accrued to said infant, and that he had not,
in any way, assigned the claim for such damages to the
plaintiff. That at the time the defendant took said lease
&c., he supposed said lessor had a right to give the same.
3d. That the defendant plowed only as good husbandry
required, and offered to seed down the same as was need-
ful. But the lessor neglected and refused to furnish the
seed, and that the defendant afterwards settled all dam-
ages with said lessor, and seeded said farm according to
his agreement in said lease. And that all timber cut or
carried off from said farm was by consent and direction
of said lessor, and accounted for by the defendant before
the assignment of said lease to the plaintiff. That no
wood was cut from said land except what was necessary
for the defendant's family, and such as was authorized by
said lease.

On the trial, the defendant's counsel offered to prove
that said Henry N. Adams was the only child and heir at
law of Norton Adams, deceased, and that he inherited the
said land in fee from his father, free and clear of incum-
brance, except the unassigned right of dower in his
mother, the lessor, who was his general guardian, and that
the defendant's occupancy of the farm, under said lease,
was terminated in pursuance of notice previously given,
according to the requirements of said lease, April 1, 1860,
and that the plaintiff then went into possession of said
farm. Each and every part and parcel of the evidence
offered by the defendant was duly objected to by the
plaintiff's counsel, upon the ground that the defendant
was estopped from denying or disputing the title of his
lessor; which objection was overruled, and the plaintiff's
counsel duly excepted, and the evidence so offered was
received. The plaintiff's counsel, on being requested by
the defendant's counsel, admitted that he did not expect
to prove any injury to the personal property, but only
damages affecting the real estate. The defendant's coun-

sel then alleged that such damages would be recoverable in an action of waste, and belonged to the reversioner, and not to the plaintiff. The plaintiff's counsel insisted that this was an action for a breach of the contract contained in the lease, and that the defendant could not dispute or question the title of his landlord, and at all events the defendant was liable to the plaintiff for the breach of contract, although the damage might be recoverable in an action of waste. That said plaintiff was now, and had been, the owner of the farm, and of said lease &c., from April 3, 1859. The court said that the plaintiff was not entitled to such damages, although they were provided for in the lease. To which decision the plaintiff's counsel excepted. The defendant's counsel thereupon moved for a nonsuit. The court granted the motion, and the plaintiff's counsel duly excepted.

*Mr. Raynor*, for the appellant.

I. The defendant having taken the lease and entered into possession of said farm, and held the same under and by virtue thereof, is estopped from denying the title of his landlord. (3 *Abb. Dig.* 644, *&c., and cases there cited.*) Or that he is liable in an action for damages at the suit of the lessor, or the plaintiff, who is the assignee of said lease and owner of said farm, for a breach of the condition of said lease. (3 *Abb. Dig.* 644.)

II. The plaintiff was in truth and in fact the owner of said farm and of said lease, from April 13, 1859, together with any and all claims that had accrued or might accrue under said lease, for damages.

III. The defendant being estopped under said lease from maintaining his defense, the plaintiff should have been allowed to prove his cause of action.

IV. The plaintiff having become the owner of said farm and of said lease on the 13th day of April, 1859, ought to have been allowed to show that the breach of said agree-

ment, and the damages to said plaintiff by reason thereof, all accrued after that time, and that the defendant was therefore liable to the plaintiff in said action, for such, damages.

V. The judge at the circuit erred in holding that the plaintiff was not entitled to recover damages for the breach of the contract, although they were provided for in the lease.

VI. The judge also erred in nonsuiting the plaintiff, and especially at that stage of the trial.

VII. The lessor to the defendant was the mother and general guardian of said infant, and as such had the right and was bound to take care of his property, and lease the farm and collect the rents. (2 *Kent's Com.* 235, *7th ed.*) And might also maintain an action for damages, or trespass, in her own name, and could also bring ejectment, if necessary. (*Idem.*)

VIII. On the 13th of April, 1859, the plaintiff bought the farm in question, and took it subject to the lease, which was then assigned to him. From that time to the end of said lease, all the damages done to said farm, and that in any way accrued from the breach of said contract or lease, accrued directly to the plaintiff, and he alone was entitled to recover therefor.

*L. H. & F. Hiscock,* for the respondent.

I. That said damages were recoverable in an action by the infant, is beyond question. That was the rule at common law, and is made so by statute. (3 *R. S.* 621, § 4, *5th ed.*) This right belonged to the grantor of the plaintiff, Thacker, by statute, and it was a right that could not be waived, by an infant at least; and the counsel for the appellant must take the position that the defendant, Henderson, is liable to have collected of him, by two persons, damages, and the same damages, for the same cause of action.

Thacker *v.* Henderson.

II. The plaintiff contends that the principle, "that a tenant cannot dispute his landlord's title," estops Henderson from saying that another than the plaintiff has the right to sue for the damages. We understand the rule to be this; that a tenant is, by his lease, estopped from saying he has, at the time of the taking of the lease, a better title than the landlord, and that in all actions, in which the primary and principal object is to try the question of title, he is estopped by his lease. But this is not that case. Henderson claims no interest in the land. He does not dispute the right of his landlord to lease. She might have the right to lease, and not the right to recover for waste. She might be a tenant for years or life, in possession, and doubtless as such would have the right to lease the land to him ; but the action must be brought by the reversioner, or the person injured must be the party bringing the suit. "The persons who may be injured by waste are such as have some interest in the estate wasted." *(See* 3 *Black. Com.* [*Wend.*] 224, *marg.)* And it is well settled that the damages are to be apportioned among those entitled thereto according to their interest. The rule is, "that all parties materially interested in the subject matter of the suit ought to be made parties. All should be brought before the court, so as to make the performance of a decree safe to those compelled to obey it, and to prevent the necessity of the defendant's litigating the same question again with other parties." *(See Kidd* v. *Dennison,* 6 *Barb.* 9–18.) That was an action of waste brought by the owners in fee, (tenants in common,) and it was holden that H., who held an executory contract of sale of the interest of one of the plaintiffs, was a necessary party to the suit. *(See Christie* v. *Herrick,* 1 *Barb. Ch.* 260.) But in this case we are not driven to the necessity of impeaching the title of the lessor, ourselves. The lease provided for being terminated by a sale of the premises, and was so terminated a year previous to the end of the term, and in effecting this termination

the lessor put upon record the evidence that she had no title to the premises, and that any action for waste belonged to her infant son, Henry N. Adams. We say, then, that even admitting that while we held under her lease, we could not question her title, yet when she (the lessor) by means of the assertion of her own want of title, and of a title in a third person, terminates the tenancy and turns us out of possession, we have a right to take her at her word, and insist that her want of title deprives her of a right to recover in an action to which the title is essential, in which her recovery would be no bar to that of her minor child.

*By the Court,* MULLIN, J. Norton Adams died seised of the premises described in the complaint, prior to the 28th of September, 1857. He left surviving him a minor son, Henry Adams, and his widow, Elizabeth R. Adams, now Elizabeth R. Woolston. It seems that the mother had been appointed general guardian of her son Henry, but at what time does not appear. On said 28th day of September, 1857, the widow leased the premises in question to the defendant, for the term of three years from the 1st of April, 1859, at an annual rent of $350. If the premises were sold, the lessor had the right to terminate the lease at the end of the first or second year. The lease contained covenants on the part of the lessee, to work the farm in a good farmer like manner, and to keep it in good condition; to seed down part, &c. On the 15th of April, 1859, a contract was entered into between the said Elizabeth and the plaintiff, subject to the approval of the Supreme Court, the one to sell and the other to purchase said farm, on the terms specified in the complaint. Subsequently such proceedings were had in said court, on the petition of the said Elizabeth R., as guardian of said Henry Adams, that she was authorized to sell to the plaintiff said premises; and in pursuance of such order, said Elizabeth executed a

conveyance of the premises to the plaintiff, whereby he became the owner of the fee of said premises absolutely, the widow having released her dower therein. It was a part of the arrangement between the said Elizabeth and the plaintiff that the lease in question should be assigned to him; and it was assigned, except the rent. The assignment bears date the 13th of April, 1859, being the same date with the contract of sale. The proceedings to obtain authority to sell were instituted in November, 1859, and completed in February, 1860. The deed to the plaintiff is dated on the 2d of April, 1860.

The action was brought to recover damages for breaches of the covenants in the lease. On the trial, the lease, assignment, agreement to sell, and the proceedings to obtain permission to sell, and the deed in pursuance thereof, were put in evidence. The plaintiff then offered to prove breaches of the covenants, caused by injury to the buildings, fences, bad husbandry, &c., which was objected to, and rejected, on the ground that the plaintiff could not maintain an action for such breaches, and the complaint was dismissed; and from such judgment this appeal is taken.

Before proceeding to examine the principal question, it is necessary to ascertain whether the lease was valid, and whether the plaintiff acquired any right or interest in the covenants contained therein. The father having died, leaving a minor child, the mother became the guardian in socage, and as such was entitled to the rents and profits of his real estate, (3 *R. S.* 2, § 5, *5th ed.*;) and such right continued until a testamentary or other guardian was appointed. (*Id.* § 7.) The chancellor, in *Field* v. *Schieffelin*, (7 *John. Ch.* 150,) held that a guardian in socage of real estate may lease it in his own name, and dispose of it during the guardianship. And he further held that a chancery guardian had the same power. Chief Justice Nelson, in *Holmes* v. *Seely*, (17 *Wend.* 78,) says: "A guardian in socage

has the custody of the land of the infant, and is .entitled to'profits for his benefit.   He has an interest in the estate, and may lease it, and recover in his own name, and bring trespass.   He is in possession by right, and may of course maintain the action of trespass or ejectment against any person entering upon him without right."   In *Pond* v. *Curtiss*, (7 *Wend.* 45,) the lease, in its commencement, read as follows: " It is agreed by and between E. Curtiss, minor, by B. Pond, his guardian &c., and Elisha Curtiss" &c.   It was signed Elisha Curtiss, [L. s.,] B. POND, [L. S.] The suit was brought by the guardian, in his own name. The defendant pleaded *non est factum*, and specially, that the plaintiff was guardian, and the ward had attained the age of twenty-one before the rent sued for came due. There was a demurrer; but the court overruled it, holding that the guardian may sue in his own name, on a lease made by him in his own name, of the ward's land, even after the ward has come of age.

If then the mother was guardian in socage, she had the right to make the lease of the premises in question in her own name, and it bound the infant as effectually as if made in his name.   But if the mother was not guardian in socage, but the general guardian of her son, she had, as such, the same power as a guardian in socage.   (3 *R. S.* 243, § 4, 5th ed.   *Id.* 244, § 10.   *Id.* 245, § 20.   *See also opinion of the chancellor in Field* v. *Schieffelin*, 7 *John. Ch.* 150, *cited supra.*)

The minor, then, as owner in fee, had no right of action for injuries to the premises covered by the covenants in the lease, except upon the lease itself.   Had the lease been made without authority and the minor had done nothing to ratify it, it is quite probable that a court of equity would have protected the tenant against an action for damages, on the lease, while the lessee was liable in waste to the owner in fee.   But that question is not here.   Only one action can be maintained, and that action must be on the lease.   If the injuries done to the property were not

Thacker *v.* Henderson.

covered by the lease, a question might then arise, whether the owner in fee might not sue for waste. But that question is not here. The action is on the lease, and no recovery can be had except for such damages as are covered by it. The lease is unquestionably assignable, and the assignee can recover damages for breaches of all covenants therein which may be assigned. The question then is, are those covenants, by which the lessee obligates himself not to injure the real estate, assignable? If they are, the plaintiff was entitled to maintain this action.

Before the Code, the term "*not assignable*" had two significations; one of which was, that a particular thing was not the subject of assignment, the other, that it was not assignable so as to vest in the assignee a right of action. A right of action for an injury to the person or the character was not the subject of an assignment. A non-negotiable note was not, at common law, assignable, so as to enable the assignee to sue in his own name. But in equity, before the Code, and at law or in equity since the Code, such an assignee may sue in his own name. Covenants in a lease were the subject of assignment. Some of them could be assigned, and the assignee could sue in his own name for a breach; the breaches of others must have been sued for in the name of the assignor. When the covenant was broken at the time of the assignment, the assignee could not sue in his own name for damages for such breaches. (8 *Cowen*, 211. 2 *Hill*, 475. *Woodfall's L. & T.* 355. 2 *Hill. Abr.* 392, 393.) But where the assignee of the lease was owner of the reversion and the covenant ran with the land, then he might sue for all breaches happening after the assignment. (2 *Hill*, 274. 3 *Barb. Ch.* 52. 3 *R. S.* 37, § 17, *5th ed.*) When, however, he was the assignee of the lease, but not of the reversion, and the covenants did not run with the land, he could sue in his own name for breaches occurring after the assignment. (8 *Cowen*, 211. 3 *Denio*, 297.) But if

he did not own the reversion, he could not recover in his own name for breaches of covenants which run with the land. (8 *Cowen,* 211. 3 *Denio,* 296, 297. 1 *Hill. Abr.* 129, § 74.)

The lease was assigned in April, 1859, and the assignment took effect immediately. The contract of sale subject to the approval of the court bore date the same day of the assignment of the lease, and took effect immediately. In pursuance of this agreement, title was subsequently perfected in the plaintiff. The deed from the special guardian to the plaintiff bears date the 2d of April, 1860. The contract of sale by the mother was wholly unauthorized, and did not bind either the son or the estate, except so far as the mother, as guardian, had the power to deal with the possession. I have already shown that she had, as guardian, such an interest in the premises as would enable her to maintain trespass, or even ejectment, (*see also* 5 *John.* 51,) during the son's minority. The lease to the defendant may not have covered the whole period of the minority; if not, then there was a reversionary interest in the guardian, which she would have the right to assign; and as this was the only interest the guardian had to convey, it is probable that this is all that the plaintiff got under the contract with the guardian. If this interest passed, as I think it did, the plaintiff had such a reversionary interest in the premises as would enable him to recover damages for an injury to such interest. The deed from the special guardian did not convey to the plaintiff any interest in the fee, which would enable him to sue for an injury to such estate or interest before the actual delivery of the deed, which seems to have occurred on or about the 2d of April, 1860. It was conceded, on the trial, that the defendant gave up the possession of the farm on the 1st of April, 1860. It is quite clear that no damages occurred for which the plaintiff could sue as owner of the reversion under the deed of

Thacker *v.* Henderson.

the 2d of that month. If he is entitled to recover at all it must be on the ground above suggested, as assignee of the lease and the interest in the premises as tenant of the guardian under the contract of sale, which, for the purposes of the case, we must treat as the creation of a tenancy to take effect after the termination of the lease of the defendant. So far, then, as the acts of the defendant were prejudicial to the rights of the plaintiff standing in this relation to the premises, he is entitled to recover, but no further. The minor was the owner of the fee in reversion, and for injuries to such interest he had a right of action, and the bringing the one action was no bar to the action of the other, as they sued in different rights, and to protect different interests. (1 *Chit. Pl.* 51.) The learned justice held, at the circuit, that the plaintiff was not entitled to damages for an injury to the land, although provided for in the lease. In this I think he was mistaken. The proposition that the assignee of the lease, only, cannot recover for injury to the reversion, is perfectly correct. But under the peculiar facts of the case, it seems to me the plaintiff had such an interest in the reversion as entitled him to recover for injury done to it. For these reasons, I think, the plaintiff was improperly nonsuited, and that the judgment should be reversed and a new trial granted, costs to abide the event.

MORGAN, J., dissented.

New trial granted.

[JEFFERSON GENERAL TERM, October 7, 1862. *Mullin, Morgan* and *Bacon,* Justices.]