In the Matter of the Application of TITLE GUARANTEE AND TRUST COMPANY for Payment of Award Made for Parcels Nos. 571, 574A and 575A, on the Damage Map and in the Final Decree of the Supreme Court in the Proceeding to Acquire Title to a Public Beach, from Jacob Riis Park to the Westerly Line of Beach Twenty-fifth Street at Rockaway Beach in the Borough of Queens, City of New York.

ROBERT S. BOGGIANO, an Infant, by MARIA BOGGIANO, His General Guardian, Appellant; TITLE GUARANTEE AND TRUST COMPANY and Others, Respondents.

Second Department, July 3, 1934.

*Benjamin S. Thaw*, for the appellant.

*Edward J. Pigott*, for the respondent Title Guarantee and Trust Company.

*Charles E. Clarke* [*Paul Windels, Corporation Counsel, Robert H. Haskell* and *Ten Broeck S. Imlay* with him on the brief], for the respondent the Chamberlain of the City of New York.

DAVIS, J.  The appellant moved to vacate an order entered August 15, 1932, which ratified and confirmed, *nunc pro tunc*, an assignment made by a general guardian of an award to an infant in condemnation proceedings and directed the chamberlain of the city of New York to pay the award to the Title Guarantee and Trust Company, the ultimate assignee.  The motion was denied, and in behalf of the infant this appeal has been taken. The history of the transaction is considerably involved and made much more so by the incomplete state of the record.  In addition, it is readily inferred that certain interested parties have sought to confuse the issue and have failed to be frank in argument and brief in enlightening the court either as to the true facts. or as to the real issues to be determined.

The infant, Robert S. Boggiano, then about five years of age, was in 1925 the owner of an undivided interest in certain real property of which his mother, Maria Boggiano, and one Mamie Boggiano were the owners of the much larger undivided interests. A portion of this property was about to be taken by the city of New York for an addition to Jacob Riis Park.  Evidently the adult owners had not learned of this fact.  Apparently others more alert were better informed.  Through a dummy they contracted with the adult owners to purchase the entire tract, stipulating that the portion owned by the infant should .also be sold through the medium of the usual proceedings to sell an infant's real estate. A petition for such sale was verified on October 30, 1925; the proceeding followed the prescribed course; a contract of sale by

the special guardian was approved by the court; and on March 9, 1926, the special guardian executed a deed of the infant's interest in the entire property at a price fixed at $4,556.

About eleven days before the petition was verified and several months prior to the execution of the deed, the city had taken title, by a resolution of the board of estimate and apportionment, to a portion of this property, called damage parcels Nos. 571, 574A and 575A. Nowhere can we find in this record a description or a statement of the dimensions of these parcels as compared with the entire tract. The appellant in the brief calls it " a small portion." The respondent title company refers to it only as " a portion." After the title thereto had passed to the city, it is obvious that it could not be sold again in the proceedings undertaken in behalf of the infant. Title thereto did not pass to the purchaser of the entire tract, nor did he acquire any right therein or to the award. (*Matter of Van Etten* v. *City of New York*, 226 N. Y. 483; *Matter of City of Syracuse*, 224 id. 201, 206, 207).

After the sale and deed of March 9, 1926, the mother, Maria, was appointed general guardian. We assume that the purchase price was paid to her, although that is one of the many material facts not stated in record or brief. Evidently she and others did not discover the fact that the city had taken title to this " small portion " until about November 15, 1929. At that time, apparently being solicited so to do, she as general guardian of the infant made an assignment of the prospective award to persons not parties either to this record or to the infant's proceedings, or at any time, so far as it appears, holders of the title. The assignment recited that it was made " in order to confirm the conveyance " of the infant's interest. The assignment does not recite any consideration and it is not claimed that anything was paid.

The same assignees at about the same time took an assignment of the prospective award, for a nominal consideration, from the purchaser (or, rather, the grantee of the nominal purchaser) of the entire tract, of which a portion had been taken by the city. These assignees, at about the same time, assigned these prospective awards to the Title Guarantee and Trust Company for an expressed consideration of $6,240. We are not certain whether this assignment was intended to cover the future awards to be made for the entire damage parcels or only the share of the infant. The award for the entire portion taken greatly exceeds the amount of consideration just stated for the assignment. As we have stated, the infant was not divested of title, either to the property condemned or to the award subsequently made, by the attempted conveyance of the entire tract, though there might be some deduction, apportion-

ment or readjustment made as to the purchase price if the purchaser or his representatives are able to show an equitable basis therefor.

Eventually the condemnation proceedings terminated about July 20, 1931, in a decree which fixed the award for the infant's share at $4,641.64. This award was about $100 more than he was paid for his interest in the entire tract. The sum was paid or credited to the account of the infant, and in his name, in the office of the chamberlain. While in this record the facts are obscure, it appears that in the proceedings leading to the final award the title company attempted to have the decree so framed that there would be payment to it as assignee. In this it was defeated, and, as has been said, the award was made to the infant. There was no appeal from the decree or any part thereof. Therefore, a judgment of a competent court had fixed title to the award in the infant.

It appears on the face of things that the infant originally received some compensation for property that he did not and could not sell. Whatever rights and remedies the original purchaser or his representatives had we are not now called upon to determine. As to the title company, it could resort to its assignor for redress for making an illegal assignment to it. Perhaps it could have reopened the infant's proceedings for an apportionment or readjustment of the purchase price, or have obtained relief in a suit in equity based on mutual mistake; or it might have pocketed its loss. We have no purpose to outline either the procedure or the policy it might properly have chosen. But least of all was the procedure it adopted the proper one, for that contemplated unloading the loss on the infant.

The money derived from the sale of the real property of an infant retains its character as real estate whether the sale was made, as here, in statutory proceedings (Civ. Prac. Act, § 1402; *Matter of McMillan,* 126 App. Div. 155; affd., 193 N. Y. 651); by partition (Civ. Prac. Act, § 1063; *Horton* v. *McCoy,* 47 N. Y. 21); or in condemnation (*Matter of Department of Public Parks,* 89 Hun, 529; *Matter of McMillan, supra*). Neither the general guardian nor the court has inherent power to dispose of the real property of an infant in the absence of statutory authority; and when such authority is given it must be strictly followed. (*Meiggs* v. *Hoagland,* 68 App. Div. 182, 188; *Thacker* v. *Henderson,* 63 Barb. 271; *Losey* v. *Stanley,* 147 N. Y. 560.) (See Dom. Rel. Law, § 83; Real Prop. Law, § 62.)

Nowithstanding the decree in favor of the infant directing the payment of the award to the chamberlain in his name, and the principles of law just stated, the title company undertook by indirect means to accomplish what it had failed to accomplish at

the time the condemnation decree was granted, from which it had not appealed. It made a motion in the condemnation proceeding, now practically closed, for an order " confirming and ratifying," *nunc pro tunc*, the assignment of the award by the general guardian. The proceedings that followed are interesting but comparatively unimportant. The general guardian, of course, did not appear to take any part. The special guardian of the infant was uninformed of the infant's legal rights, and his participation was little more than a formality. In effect, as related to the infant, it was an *ex parte* proceeding, with the chief stress on the fact that the infant was to receive " double pay " for his land, which was true, as we have indicated, only in a small part. The award was treated as personal property, which it was not. The motion was granted and the chamberlain directed to pay the infant's award to the title company.

Even if it had been personal property, the rule would not have been different. The power of a general guardian to sell an infant's personal property other than in the course of regular business to preserve it and to make investments, is limited principally to expenditures for the support, maintenance and education of the infant. (See Surr. Ct. Act, § 194; Pers. Prop. Law, § 17; Civ. Prac. Act, § 1388; *Clare* v. *Mutual Life Ins. Co.*, 201 N. Y. 492, 497; *Matter of Ackerman*, 116 id. 654.) Certainly there is no power to dispose of it on some theory of equity offered by an interested party. It cannot be given away. A purchaser who deals fairly may have a right to believe that the guardian acts for the benefit of the ward and is not bound to inquire into the state of the trust (*Field* v. *Schieffelin*, 7 Johns. Ch. 150), but the rule is otherwise if he has notice of the fraud or lack of authority of the guardian. (*Warren* v. *Union Bank of Rochester*, 157 N. Y. 259, 268; *Matter of Kamhi*, 147 Misc. 620; 28 C. J. 1135, and cases cited.) The assignees all had knowledge of the facts, for in the main they are recited in the assignment. They knew or should have been advised by counsel that the assignment was unauthorized and void, and that the court was without jurisdiction to " ratify and confirm " an act illegal and void in its inception.

Infants are the wards of the courts and their rights will be guarded and preserved by the utmost vigilance and care. Naturally, this court will not be inclined to see the rights of this infant despoiled that another may recoup a loss due to mistake or lack of diligence. If the matter rested only in discretion instead of vested right, no other conclusion could be reached. The order was void for lack of jurisdiction and bound no one, however and wherever challenged or attacked. In so far as it affected the title to the

award, the orderly procedure is to vacate it. In so far as it affects the chamberlain, there can be at present no direction given.

The order entered December 14, 1933, in so far as it denies the motion to vacate the order of August 15, 1932, should be reversed on the law and the facts, with fifty dollars costs and disbursements, and the motion granted, with ten dollars costs against respondent Title Guarantee and Trust Company. In so far as it denies the motion for a direction to the chamberlain to pay the award to the general guardian it should be affirmed, without costs, and without prejudice to renew after the parties or any of them have instituted such actions or proceedings in the premises as they may be advised.

LAZANSKY, P. J., YOUNG, HAGARTY and SCUDDER, JJ., concur.

Order entered December 14, 1933, in so far as it denies the motion to vacate the order of August 15, 1932, reversed on the law and the facts, with fifty dollars costs and disbursements, and the motion granted, with ten dollars costs, against respondent Title Guarantee and Trust Company. In so far as it denies the motion for a direction to the chamberlain of the city of New York to pay the award to the general guardian, the order is affirmed, without costs, and without prejudice to renew after the parties or any of them have instituted such actions or proceedings in the premises as they may be advised.