In the Matter of the Estate of WALDEMAR EITINGON, Deceased.

Surrogate's Court, New York County, December 24, 1947.

*Hays, St. John, Abramson & Schulman* for Chase National Bank, as trustee under the will of Solomon Schild, deceased.

*Barron, Rice & Rockmore* for Motty Eitingon, individually and as executor and trustee under the will of Solomon Schild, deceased.

*Samuel Levy,* special guardian for Joan Goldstein and another, and for unborn and unknown legatees.

DELEHANTY, S. Deceased's will created trusts for the respective benefits of his three daughters. The remainders in the respective trusts are payable to the issue, if any, of the life

beneficiary. Lacking such issue there are alternative provisions under which any other daughter or her issue may benefit. Deceased died in 1919. His executors accounted and were discharged in that character by decree dated June 14, 1927. The trustees named in the will later filed an account which was settled by decree dated May 27, 1931. In this account they reported the administration *in solido* of all the trust funds. Thereafter the trustees again accounted and their second account was settled by decree dated December 12, 1932. In this account also they reported the administration of the trusts *in solido*.

One of the children of deceased upon whose life one of the trusts is limited is Blanche Eitingon Bereslavsky. For her trust a separate accounting was filed for the period beginning November, 1931, and ending November, 1937. In that proceeding a special guardian was appointed for Rose Eitingon Field, a daughter of deceased, who was then an infant. He also was appointed to represent the interests of the infant children of Florence Eitingon Goldstein [the third daughter] and unborns and unknowns. In that accounting proceeding a compromise of certain issues was arrived at and a decree settling the account in accordance with the compromise was made on August 22, 1938.

A separate account for the separate trust fund for the life income benefit of Florence Eitingon Goldstein was filed for the period beginning November, 1931, and ending November, 1932. In that proceeding the same special guardian was appointed for the then living infant children of Florence Eitingon Goldstein and also for any unborn issue of the three daughters of deceased already mentioned. The proceeding to settle this account is still open.

A third separate accounting proceeding was initiated in 1939, to settle the trustees' account for the trust for the benefit of Rose Eitingon Field. This accounting covered the period from November, 1931, to April, 1939. The same special guardian was there appointed for the living children of Florence Eitingon Goldstein and for any unborn issue of hers as well as for any unborn issue of Blanche Eitingon Bereslavsky and Rose Eitingon Field. The life beneficiary, Rose Eitingon Field, became an adult in 1939. In the accounting proceeding she developed some facts on the basis of which a separate proceeding was begun by her in April, 1940, to obtain the vacatur of the decrees already recited which settled the executors' account in 1927, and the trustees' accounts settled by decrees in 1931 and 1932. Her application resulted in extensive hearings at the end of which

a decree directing the reopening of all prior decrees was made (*Matter of Eitingon,* N. Y. L. J., Aug. 28, 1941, p. 449, col. 7, affd. 270 App. Div. 1009, affd. 297 N. Y. 557). The application to vacate the prior decrees was consolidated with the then pending and still pending accounting. After final action by the appellate courts and by order dated August 6, 1947, the so consolidated accounting and vacatur proceeding was further consolidated with the reopened executors' and trustees' accountings initiated respectively for the years 1927, 1931 and 1932. The same special guardian is still acting in that proceeding as well as in the still open accounting proceeding for the trust for the benefit of Florence Eitingon Goldstein.

The special guardian named in the accounting for the trust established for the life benefit of Florence Goldstein filed a petition seeking decrees directing the reopening of the decree settling the account of the executors and the two prior decrees settling the accounts of the trustees in such trust. The same individual acting in his character as special guardian in the proceeding for the settlement of the trust for the life benefit of Blanche Bereslavsky (that accounting, as already recited, having been settled by decree dated August 22, 1938) filed a petition for like decrees reopening the decree settling the executors' account and the decrees of 1931 and 1932, settling the account of the trustees for all the trusts including the trust for Blanche Bereslavsky. In the case of the trust for Blanche Bereslavsky the special guardian also seeks reopening of the decree of 1938, settling the account of the trustees pursuant to the compromise of that year. The petitioner made parties respondent and caused citations to issue to the now surviving executors and trustees, Motty Eitingon and May Eitingon Mence, and to Chase National Bank of New York, Florence Schild and Motty Eitingon as trustee of the estate of Solomon Schild, now dead, who had acted as executor and as trustee in the periods covered by the accountings and the decrees now sought to be reopened. A motion to dismiss the proceedings " on the ground that the petitioner has no right, status or authority to maintain " them is made by Motty Eitingon as an individual, as executor and trustee under the will of Waldemar Eitingon and as trustee of the estate of Solomon Schild, deceased. Chase National Bank in its character as trustee of the estate of Solomon Schild, deceased, also moves to dismiss the proceeding on the same ground. No like motion has been made by May Eitingon Mence. So far as made by the trustees of the estate of Solomon Schild

the motions say also that "no claim or cause of action is set forth" in the petition as to the trustees of that estate. The motions seek additional relief but the first matter to be determined is the status of the petitioner to initiate the proceedings. The same fundamental challenge to his authority is made by all the moving parties. The point at issue is whether or not a special guardian may ask for the relief sought by the petitioner in the proceedings to which the motions to dismiss are directed.

The moving parties seek to limit the functions of the special guardian to the narrow compass of an examination of the transactions reported in the particular account in respect of the settlement of which he was appointed. The court is not in agreement that a special guardian is so circumscribed. He is the court's appointee for the purpose of protecting the rights of infants who are the wards of the courts which must see to it that such rights are guarded and preserved by the utmost vigilance and care (*Matter of Title Guarantee & Trust Co.*, 242 App. Div. 80, 84; *Continental National Bank* v. *Strauss*, 137 N. Y. 148, 153; *Kaplan* v. *Kaplan*, 256 N. Y. 366). In any accounting of a fiduciary there is always present the question whether he has accounted for all the trust property for which he is in fact accountable. If he possesses property for which in truth he is accountable he may not acquire title to it nor escape liability to account for it merely on the basis of success in concealing it in a prior accounting. The question whether or not his opening schedule of assets on hand at the beginning of the accounting period is a correct one is always open to inquiry by a special guardian. The fact that decrees have been entered on prior accountings is not of itself a barrier to the inquiry. If any decree was procured by affirmative fraud or by concealment of material facts the court has the power to reopen such decrees (Surrogate's Ct. Act, § 20) and the special guardian has authority to invoke the power of the court in this respect.

The parties now moving to dismiss the application of the special guardian cannot question the infant's right to have the prior decrees reopened if cause therefor exists. Their immediate motions can have no consequence except to effect delay if this attack upon the special guardian's authority were successful. There could be no doubt that a general guardian or a next friend or the infant himself could initiate a separate proceeding to accomplish the result now sought directly by the special guardian. It would constitute an unwarranted throw-

back to days when courts were more concerned with form than with substance to say that a special guardian in a later accounting may not seek the reopening of prior decrees when such reopening is necessary to establish the liability of a fiduciary to report more property as on hand than is reported in his opening schedule. This court should not countenance '' these advances and retreats, these reconnaissances and skirmishes '' at the cost of '' postponement of justice equivalent to a denial.'' (*Matter of Raymond* v. *Davis*, 248 N. Y. 67, 72.)

In respect of the Bereslavsky trust and the decree of 1938, there is additional reason why the special guardian should be held entitled to make his present application. He was a party to the compromise agreement which resulted in the decree of 1938, and he there represented the same interests as those he now represents. If there be invalidity in the 1938 decree because of fraud of the accounting parties he was one of those defrauded and patently is entitled to invoke the power of the court to correct the fraud. Even in the strictest interpretation of his functions they must be deemed to continue to the point of assuring a valid decree in that proceeding (*Matter of Stewart,* 23 App. Div. 17; *French* v. *Kenworthy,* 42 Hun 654, opinion in 5 N. Y. St. Rep. 102; *Matter of Severance,* 106 Misc. 710, 715, affd. 191 App. Div. 885; *Matter of White,* 180 Misc. 789).

Adhering fully to its view that without regard to other considerations a special guardian has the power in any accounting to search the prior record on tenable legal bases for the purpose of determining that the opening schedule of the fiduciary is an accurate one, the court notes also that in the set of circumstances here present there is special reason to validate action by this special guardian. As already noted, the trusts were accounted for *in solido* in 1931 and 1932. The transactions in the trusts for Florence Goldstein and for Blanche Bereslavsky were combined with the transactions in respect of the trust for Rose Eitingon Field. Of course in the executorial accounting settled in 1927, there was reported the handling by the executors of all of the property of deceased including that which later was accounted for *in solido* in the trust. All of these decrees have been reopened as to Rose Eitingon Field. The course of the litigations which resulted in the final action of the appellate courts validating this court's decrees confirm the power of a special guardian to go into prior accountings if he has legal reason therefor. In the Rose Eitingon Field trust accountings the special guardian has been confirmed as a party bene-

fiting by the decrees reopening the prior proceedings though his status as special guardian in that trust is precisely the same as the status which he now enjoys in respect of the trusts for Florence Goldstein and Blanche Bereslavsky. While the point now made was not argued directly on the appeals, nonetheless the proceedings in respect of the Field trust confirm the viewpoint here expressed that the special guardian is authorized to make the application now before the court. The motions to dismiss on the ground of lack of power of the special guardian to initiate the respective proceedings are in all respects denied.

The motion of the trustees of the estate of Solomon Schild to dismiss the application on the ground that no basis for relief against them is shown must be granted. They are in the proceeding in their character as trustees only. While the attack made by the special guardian is an attack upon the entire body of executors and trustees of the estate of Waldemar Eitingon, there is nothing in that fact which involves the trustees of Solomon Schild as such. If his conduct is to be attacked it must be by way of his executors who are the representatives of his estate.

The further relief sought deals with the particular text of the petition. The court is in agreement with the moving parties that the petition as now phrased does not permit the parties respondent to make answer to the petition. Under subdivision 2 of section 51 of Surrogate's Court Act a petition in this court must state " the facts upon which the jurisdiction of the court depends to entertain the application and grant the relief asked for ". While that text is not the same as the text of section 241 of the Civil Practice Act the petitioner in any proceeding here must plead his facts in the same general manner as is required in civil litigations generally. The petitions here depart so widely from the standard of pleadings in civil actions that the court will not pass on particular paragraphs therein but will require an amended petition to be served. Such amended petition is to conform to the requirement that it state the facts alleged by petitioner to entitle him to the relief asked for. Evidence should not be pleaded nor should recitals be made of proceedings elsewhere had unless such proceedings are alleged to constitute an adjudication binding on the parties here. Such amended petition is directed to be served and filed within twenty days. The respondents who are continued in the proceeding will have twenty days thereafter to answer such amended petition.

Submit, on notice, orders in the respective proceedings accordingly.